# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PLANT OIL POWERED DIESEL FUEL SYSTEMS, INC.,

       Plaintiff,

vs.                                                                                          No. CIV 11-0103 JB/WPL

EXXONMOBIL CORPORATION; ROYAL DUTCH
SHELL, PLC; BP, PLC; CHEVRON CORPORATION;
CONOCOPHILLIPS; ASTM INTERNATIONAL f/k/a
AMERICAN SOCIETY FOR TESTING AND
MATERIALS; BP PRODUCTS NORTH AMERICA, INC.;
and CHEVRON USA, INC.

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion and Application for

Temporary Restraining Order and Order to Show Cause, filed February 1, 2011 (Doc. 5)("Motion").

The Court held a hearing on March 1, 2011.  The primary issue is whether the Court should

preliminarily enjoin the Defendants from taking any further action during the pendency of this

action, in the absence of prior approval from this Court, with regard to (a) draft Standard

Specification for Triglyceride Burner Fuel for use of triglyceride diesel fuel in larger-sized

commercial and industrial burners, number WK 21463; (b) ASTM International f/k/a American

Society for Testing and Materials ("ASTM") Work Item 30622; (c) ASTM Work Item 3008; and

(d) ASTM Work Item WK27610.  Because Plaintiff Plant Oil Powered Diesel Fuel Systems, Inc.

("POP Diesel") has not shown imminent harm would result if the Court does not issue a preliminary

injunction, the Court denies its Motion without prejudice to POP Diesel renewing the Motion if the

case is not proceeding at an adequate pace to allow the Court to decide the merits before ASTM

adopts the Draft ASTM Triglyceride Standard.

## FACTUAL BACKGROUND

POP Diesel develops, manufactures, and sells triglyceride diesel fuel -- fuel consisting of vegetable oil and animal fat -- and related equipment that permits and manages the use of triglyceride diesel fuel in residential, commercial, and industrial burners and in diesel engines.  See Verified Complaint ¶ 4, at 3, filed February 1, 2011 (Doc. 1)("Complaint").  POP Diesel also owns and operates a state-licensed triglyceride diesel fuel processing and filling station in New Mexico, which it opened as the first such station in the United States in 2006.  See Complaint ¶ 4, at 3.  The cities of Albuquerque, Las Cruces, and Santa Fe and the town of Taos have all pledged to assist POP Diesel in establishing the first state-wide network of triglyceride fuel filling stations in the country. See Complaint ¶ 5, at 3.  POP Diesel's feedstock for making triglyceride diesel fuel at this time consists primarily of waste vegetable oils and greases obtained from restaurants and industrial and agricultural operations, of which there is a virtually unlimited supply.  See Complaint ¶ 6, at 3. Defendants ExxonMobil Corporation ("ExxonMobil"); Royal Dutch Shell, PLC ("Shell"); BP, PLC ("BP"); Chevron Corporation ("Chevron"); and ConocoPhillips Company ("ConocoPhillips") (collectively "the Defendant Oil Companies"), are the world's largest producers and sellers of petroleum-based diesel fuel, which competes with triglyceride diesel fuel, but which POP Diesel alleges is inferior to triglyceride diesel fuel for use in burners and diesel engines, for reasons of cost, performance, product safety, and environmental impact.  Complaint ¶¶ 7-17, at 3-5.

Each of the Defendant Oil Companies is a member of ASTM, one of the largest standard-setting organizations in the world.  See Complaint ¶¶ 7-17, at 3-5.  ASTM promulgates quality standards for many products, including fuel oils, which have been adopted by reference in

federal and state statutes throughout the United States, including New Mexico.  See Complaint ¶¶ 19-21, at 5-6.  ASTM's "membership is composed of three categories: producers, consumers, and general interest (academic, etc.) . . . [and] [i]ts specifications are written by technically qualified committees composed of members from the three categories."  Application of Am. Soc'y for Testing & Materials, 231 F. Supp. 686, 688 (E.D. Pa. 1964).

This case involves ASTM's promulgation, with the Defendant Oil Companies' alleged involvement, of a proposed new standard and guidelines for biofuels that would limit, if not bar, the use of triglyceride diesel fuel and related products, including those of POP Diesel.  Plaintiff's Memorandum of Law in Support of Motion for Temporary Restraining Order/Preliminary Injunction, filed February 1, 2011 (Doc. 6)("Memorandum").

**1.    The Relevant Markets.**

The relevant product and geographic markets for purposes of this action are: (i) the diesel fuel market for residential, commercial, and industrial burners in the United States, and (ii) the diesel fuel market for diesel engines in the United States ("the Relevant Markets").  Complaint ¶ 22, at 6.  POP Diesel competes in the Relevant Markets against the Defendant Oil Companies, as well as against other producers and sellers of diesel fuel.  See Complaint ¶ 25, at 7.

**2.    The Draft ASTM Triglyceride Standard.**

ASTM's largest committee, titled D02, Petroleum Products and Lubricants ("Committee D02"), of which the Defendant Oil Companies are members, promulgates standards, specifications, classifications, test methods, and guidelines for liquid fuels in the diesel fuel industry.  Complaint ¶ 21, at 6.  To date, Committee D02 has approved for mixing with petroleum-based diesel fuel a non-petroleum blend stock, commonly known as "biodiesel," that meets ASTM Standard

Specifications D396 and D975.  Complaint ¶ 34, at 8-9.  ASTM Standard Specifications D396, D975, and D6751 approve up to five percent biodiesel blended with petroleum-based diesel fuel for use in burners and diesel engines.  See Complaint ¶ 34, at 8-9.

POP Diesel alleges that, because of the five-percent cap, biodiesel represents only an incremental step in reducing net greenhouse gas emissions as compared with the near one-hundred percent use of triglyceride diesel fuel POP Diesel's equipment permits.  See Complaint ¶ 36, at 9. The Defendant Oil Companies do not oppose biodiesel, which poses no threat to petroleum-based diesel fuel because of the five-percent cap.  See Complaint ¶ 36, at 9.  POP Diesel contends that supporting the five-percent cap on biodiesel in ASTM Standard Specifications D396 and D975 allows the Defendant Oil Companies to portray themselves as favoring renewable energy.  See Complaint ¶ 36, at 9.  Without federal tax incentives, which expired at the end of 2009, the manufacture of biodiesel is largely not cost-effective or economically or commercially feasible, and many biodiesel facilities today are sitting idle.  See Complaint ¶ 37, at 9.

Several years ago, burner manufacturers seeking insurance coverage for the use of triglyceride diesel fuel asked ASTM Committee D02 to develop a standard for triglyceride diesel fuel to be used in burners.  See Complaint ¶ 38, at 10.  Underwriters Laboratories, an insurance actuarial firm, would not rate burners using triglyceride diesel fuel, and some insurers therefore would not offer coverage, unless and until ASTM first adopted a standard specification for triglyceride diesel fuel for burners.  See Complaint ¶ 38, at 10.  Various subcommittees of Committee D02, which POP Diesel contends the petroleum-based diesel fuel interests dominate, refused to adopt a specification for triglyceride diesel fuel burners.  See Complaint ¶ 39, at 10.  The request was referred to Committee D02's Subcommittee P, Recycled Petroleum Products (the

"Subcommittee").  Complaint ¶ 40, at 10.  Subcommittee established a Triglyceride Burner Fuel Working Group (the "Working Group").  Complaint ¶ 40, at 10.  Each of the Defendant Oil Companies is a member of Committee D02, the Subcommittee, and the Working Group, and, POP Diesel alleges, each has an interest in preserving the status quo embodied in ASTM Standard Specifications D396 -- for burners -- and D975 -- for diesel engines -- with the five-percent biodiesel cap.  See Complaint ¶ 41, at 10-11.

The Subcommittee and the Working Group have created and approved a draft Standard Specification for Triglyceride Burner Fuel for use of triglyceride diesel fuel in larger-sized commercial and industrial burners, numbered WK 21463 (the "Draft ASTM Triglyceride Standard").  Complaint ¶ 43, at 11.  POP Diesel asserts that the Draft ASTM Triglyceride Standard contains numerous, material misstatements of fact made with the purpose and effect of excluding sellers of triglyceride diesel fuel and related products, including POP Diesel, from the Relevant Markets.  See Complaint ¶ 45, at 11-16.  POP Diesel further asserts that the ASTM's Committee D02's, the Subcommittee's, and the Working Group's approval process for the Draft ASTM Triglyceride Standard has been marked by numerous irregularities and breaches of ASTM's own policies and procedures.  See Complaint ¶ 54, at 18-21.

During the June 2010, ASTM semi-annual meeting, POP Diesel's President, Claude Convisser, voiced objections to the Draft ASTM Triglyceride Standard at the meetings of both the Working Group and the Subcommittee.  See Complaint ¶¶ 46-49, at 16-17.  He subsequently provided the Working Group and Subcommittee with written objections to the Draft ASTM Triglyceride Standard.  See Complaint ¶¶ 46-49, at 16-17.  Convisser's oral and written objections described, among other things, the following alleged material misrepresentations in the Draft ASTM

Triglyceride Standard:

(i)     Table 1 of the Draft ASTM Triglyceride Standard, contains "Detailed Requirements for Triglyceride Burner Fuels," which refers to thirty-eight ASTM-approved test methods allegedly applicable to triglyceride diesel fuel.  Complaint ¶ 45(a), at 12.  These test methods, however, all involve tests for the properties of petroleum-based diesel fuel and have never been validated as having applicability to triglyceride diesel fuel.  These test methods thus provide invalid criteria for disqualifying triglyceride diesel fuel from fitness for use in burners.  See Complaint ¶ 45(a), at 12.

(ii)    Section 1.2 of the Draft ASTM Triglyceride Standard states that "[t]he fuels specified herein are not intended for blending with conventional [petroleum] fuel oils for this purpose."  POP Diesel contends this statement is false because triglyceride diesel fuel and petroleum-based diesel fuel used in burners are miscible, meaning that, when stored in a heated tank before combustion, they blend in a homogeneous mixture.  POP Diesel further asserts that there is no evidence that burners cannot operate on a blend of triglyceride diesel fuel and petroleum-based diesel fuel, and that such use is common without harm to burner equipment.  POP Diesel's burner equipment functions with any blend of triglyceride diesel fuel and petroleum-based diesel fuel. See Complaint ¶ 45(b), at 12-13.

(iii)    Section 1.2 of the Draft ASTM Triglyceride Standard also states that "[t]hey [the fuels specified herein] are not intended for use in . . . [certain specified] residential burners or small pressure atomization burners nor are they intended for use in internal combustion engines."  Complaint ¶ 45(c), at 13.  POP Diesel asserts, on the contrary, that triglyceride diesel fuel, properly managed, operates in all such burners and diesel internal combustion

engines.  See Complaint ¶ 45(c), at 13-14.

(iv)     Sections 5.3.1 and 5.3.2 of the Draft ASTM Triglyceride Standard define triglyceride burner
         fuel so as to exclude triglyceride diesel fuel that originates from household, non-commercial
         sources, and so as to exclude its use from residential burners.  POP Diesel asserts, on the
         contrary, that triglyceride diesel fuel can originate from household, non-commercial sources,
         and, properly managed, is suitable for use in residential burners.  See Complaint ¶ 45(d), at
         14

(v)      Section 5.3.2 of the Draft ASTM Triglyceride Standard also falsely states that "[t]he extra
         equipment and maintenance required to handle this fuel . . . may preclude its use in small
         and/or unattended installations."  Complaint ¶ 45(e), at 14.  POP Diesel asserts, on the
         contrary, that its burners do not require extra equipment or maintenance or an attendant.  See
         Complaint ¶ 45(e), at 14.

(vi)     The Draft ASTM Triglyceride Standard limits to thirty the total acid number for triglyceride
         diesel fuel, as set forth in Table 1 and Sections X1.2 and X1.5.1.  POP Diesel asserts, on the
         contrary, that when used with its equipment, triglyceride diesel fuel may have an acid
         number in excess of thirty, and is safe and appropriate for use in residential, commercial, and
         industrial burners.  See Complaint ¶ 45(f), at 14-15.

(vii)    Section X1.4.4.2 of the Draft Standard states that because, "[t]he viscosity of [triglyceride
         diesel fuel] can change significantly with relatively small temperature differences in the
         range of temperatures at which the burner operates, . . . burner manufacturers and
         triglyceride fuel users should consider the viscosity characteristics of the range of potential
         triglyceride burner fuels very carefully."  Complaint ¶ 45(g), at 15.  POP Diesel asserts, on

-7-

the contrary, that higher viscosity is not a problem for burner and diesel engine equipment that pre-heats triglyceride diesel fuel to lower its viscosity, as does POP Diesel's equipment. See Complaint ¶ 45(g), at 15.

(viii)   Section X1.4.1 of the Draft ASTM Triglyceride Standard states with regards to the temperature at which a substance turns from solid to liquid state: "An increase in pour point can occur when triglyceride burner fuel is subjected to cyclic temperature variations that can occur in the course of storage."   Complaint ¶ 45(h), at 16.   POP Diesel asserts, on the contrary, that there is no evidence that such temperature variations lead to a significant change in the pour point of triglyceride diesel fuel.   See Complaint ¶ 45(h), at 16.

(xi)   Section 1.4 of the Draft ASTM Triglyceride Standard invites "national or local regulations, which can be more restrictive."   Complaint ¶ 45(i), at 16.   POP Diesel contends that there is no basis in fact to support this suggestion.   See Complaint ¶ 45(i), at 16.

POP Diesel further asserts that there were numerous irregularities incident to the promulgation of the Draft ASTM Triglyceride Standard, as ASTM ignored many of its own procedures and safeguards required for the development of a new standard.   See Complaint ¶ 54, at 18-21.   During Convisser's comments at the Working Group meeting, ExxonMobil stated that it would vote against the Draft ASTM Triglyceride Standard if ASTM deleted the misrepresentation in Section 1.2 to which Convisser had objected, that "[t]h[e fuels specified herein] are not intended for use" in residential and smaller burners, diesel internal combustion engines, and marine applications.   See Complaint ¶ 50, at 17.   POP Diesel asserts that, as the world's largest oil company, ExxonMobil has the power to ensure that ASTM adopts the Draft ASTM Triglyceride Standard in its current form.   See Complaint ¶ 51, at 17.

-8-

POP Diesel asserts that ExxonMobil and the other Defendant Oil Companies have an interest in excluding triglyceride diesel fuel from the Relevant Markets because they produce and sell petroleum-based diesel fuel, and wish to preserve the status quo in which they collectively and individually have market power.  See Complaint ¶ 52, at 17.  The other Defendant Oil Companies have accordingly concurred with and acquiesced in ExxonMobil's position with respect to the Draft ASTM Triglyceride Standard.  See Complaint ¶ 53, at 17.  POP Diesel alleges that, in concert, the Defendant Oil Companies and ASTM are in the process of promulgating the Draft ASTM Triglyceride Standard with the purpose and effect of excluding triglyceride diesel fuel and POP Diesel's products from the Relevant Markets.  See Complaint ¶ 53, at 17-18.  The Defendants intend imminently to present the Draft ASTM Triglyceride Standard to the membership of ASTM for a vote on its adoption.  See Complaint ¶ 53, at 18.  Once the Draft ASTM Triglyceride Standard is adopted and published, numerous states will incorporate it by reference into law pursuant to existing statutes, similar to N.M.S.A. 1978, § 57-19-29.  See Complaint ¶ 53, at 18.

> 3.    **The Fit-For-Purpose Guidelines.**

POP Diesel also asserts that, in response to its objections, the Defendant Oil Companies have also moved aggressively to have ASTM restrict future approval of triglyceride diesel fuels for diesel engines.  See Complaint ¶ 57, at 22.  They have caused Committee D02 to begin the promulgation of "Fit-for-Purpose" Guidelines that limit standards for future diesel engine fuels to petroleum-based diesel fuel or biodiesel, as currently described in ASTM Standard Specification D975.  Complaint ¶ 57, at 22.  These Fit-for-Purpose Guidelines are anticipatory standards governing research and development of future products, in that they specify how a new and potentially as yet undeveloped product must function and how it must fit with existing products and processes to meet ASTM

standards.  See Complaint ¶ 58, at 22.  POP Diesel argues that these Fit-for-Purpose Guidelines are detrimental to innovation and research and development, in that they tend to limit and channel innovation towards existing products and processes, and protect existing products and processes from future competition.  See Complaint ¶ 58, at 22.

POP Diesel contends that, like the Draft ASTM Triglyceride Standard, the purpose and effect of the Fit-for-Purpose Guidelines will be to stifle innovation and to exclude Pop Diesel and other sellers of alternative diesel fuels from the Relevant Markets.  See Complaint ¶ 61, at 22.  For example, the Fit-For-Purpose Guidelines' definition of "hydrocarbon oil," a key term, will favor biodiesel, while excluding triglyceride diesel fuel.  Complaint ¶ 61(a), at 23.  The Fit-For-Purpose Guidelines shift the future burden of validating triglyceride diesel fuel to its producers, small firms that cannot afford the testing that it is the function of ASTM to provide.  See Complaint ¶ 61(b), at 23-24.  Like the Draft ASTM Triglyceride Standard, the Fit-For-Purpose Guidelines rely on standards and tests applicable to petroleum-based diesel fuel, with no proven applicability to triglyceride diesel fuel.  See Complaint ¶¶ 61(c), 61(d), at 24-27.  POP Diesel contends, upon information and belief, that the Defendant Oil Companies may have other Fit-for-Purpose Guidelines in some stage of ASTM development unknown to POP Diesel that have the same purpose and effect as they attribute to the Guidelines.  See Complaint ¶ 62, at 27.

## PROCEDURAL BACKGROUND

POP Diesel brings this action under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§ 1331 and 1337, to redress the alleged violations of Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2; N.M.S.A. 1978, §§ 57-1-1 and 57-1-2; and New Mexico common law, to enjoin the Defendants from agreeing, combining, and conspiring to bring

about the adoption of an industry standard and guidelines for triglyceride diesel fuel, the purpose and effect of which POP Diesel alleges will be to exclude it and other sellers of triglyceride diesel fuel from diesel fuel markets in the United States.

On February 23, 2011, ASTM filed its Brief in Opposition to Plaintiff's Motion for Preliminary Injunction.  See Doc. 28 ("ASTM's Response").  ASTM asserts that, after working for a time to obtain a standard to its liking, POP Diesel became dissatisfied with its inability to persuade sufficient numbers of ASTM members of its commercially motivated arguments, and that it now seeks to short circuit the process through this lawsuit, in which it recklessly asserts an antitrust conspiracy among ASTM and employees of four of its members.  ASTM argues that POP Diesel brings its suit without any plausible allegations of such a conspiracy and even though the Defendant Oil Companies represent only a tiny minority of the vote at ASTM.  ASTM further argues that, without meeting the requirements for such relief, POP Diesel asks the Court to take the "drastic step of preliminarily enjoining ASTM and the four ASTM members from voting on the Draft TG Standard and Fit-For-Purpose Guidelines, among other relief."  ASTM's Response at 1.  ASTM asserts that the absence of immediate and irreparable harm dooms POP Diesel's motion.

On February 23, 2011, ExxonMobil filed its Response in Opposition to Plaintiff's Motion for Preliminary Injunction.  See Doc. 25 ("ExxonMobil's Response").  ExxonMobil adopted ASTM's arguments.  See ExxonMobil's Response ¶ 2, at 2.  Similarly, on February 25, 2011, Chevron filed its Joinder in ASTM International's Opposition to Plaintiff's Motion for Preliminary Injunction, see Doc. 38, and on March 1, 2011, Conocophillips filed its Response in Opposition to Plaintiff's Motion for Preliminary Injunction, see Doc. 44, both of which adopted ASTM's arguments.

At the March 1, 2011 hearing, POP Diesel stated that its most imminent harm was that ASTM would submit the Draft ASTM Triglyceride Standard to an electronic ballot, because, if approved, the standard would automatically become the law by reference in over thirty states, including New Mexico.  See Transcript of Hearing at 7:2-10 (taken March 1, 2011), filed April 10, 2011 (Doc. 69)("Tr.")(Shulman).  POP Diesel contends that it has not had adequate opportunity to makes its views known in ASTM and that the Draft ASTM Triglyceride Standard is inaccurate.  See Tr. at 7:11-19 (Court, Shulman).  POP Diesel acknowledged that "once the standards's enacted it's not written in stone," "[i]t can be changed," and "[t]he change will go into law."  Tr. at 18:13-15 (Schulman).  POP Diesel also conceded that, while it hopes to expand it is currently doing business only in New Mexico, with approximately thirty truck using its fuel.  See Tr. at 19:3-21 (Court, Schulman).   POP Diesel also stated that it was "not sure" if adoption of the Draft ASTM Triglyceride Standard would "shut down the vehicles" in New Mexico.  Tr. at 20:24-21:2 (Court, Schulman).  POP Diesel then clarified that "[t]his standard deals with burner fuel, which is not vehicle fuel," and that it is "not currently marketing oil for burners," but asserted that it is "preparing to market burners."  Tr. at 22:4-17 (Court, Schulman).  POP Diesel also represented that it sought injunctive relief for only the Draft ASTM Triglyceride Standard, because the Fit-For-Purpose Guidelines are "sufficiently far from the voting stage."  Tr. at 26:21-27:2 (Schulman).  POP Diesel also stated that the Court should consider only whether to issue a preliminary injunction and not whether to issue a temporary restraining order.  See Tr. at 28:6-15 (Court, Schulman).

At the hearing, ASTM stated that it was ready to issue the ballot on the Draft ASTM Triglyceride Standard.  See Tr. at 29:1-5 (Court, Edward).  ASTM represented that the ballot would be open for thirty days, after which time the ASTM Committee on Standards would have sixty days

in which to review the process to make certain that there were no procedural irregularities.  See Tr.

at 29:5-13 (Edward).  POP Diesel's criticisms and the Working Group's response would attend the

ballots.  See Tr. at 30:5-11 (Edward).  Additionally, if one-third of the votes oppose the Draft ASTM

Triglyceride Standard, the standard is returned to committee for redrafting.  See Tr. at 30:20-23

(Edward).  POP Diesel would have the right to take an appeal of the D02 committee's decision to

the Committee on Standards, which could not be heard before October 2011, and, failing there, to

the ASTM Board of Directors, which could not be heard before April 2012.  See Tr. at 32:3-18

(Edward).  The Draft ASTM Triglyceride Standard would not become law while the appeal was

pending, giving POP Diesel the ability to forestall the Draft ASTM Triglyceride Standard from

becoming law for at least thirteen months.  See Tr. at 32:19-21, 34:1 (Court, Edward).

      In light of ASTM's representations, POP Diesel acknowledged that it did not face imminent

injury.  See Tr. at 42:4-10 ("Court: I guess the sense I get is that we're not in . . . an imminent

situation . . . .  Do you get the same impression?  MR. SHULMAN: Yes, Your Honor, I do.").  POP

Diesel further conceded that a preliminary injunction would be unnecessary if the Court could put

this case on a fast schedule.  See Tr. at 42:11-19 (Court, Shulman).  POP Diesel agreed that the

Court could deny its Motion without prejudice to POP Diesel renewing the Motion if the Court is

unable to move the case along at an adequate pace.  See Tr. at 43:23-44:20 (Court, Shulman).

## LAW REGARDING PRELIMINARY INJUNCTION

      "It is well settled that a preliminary injunction is an extraordinary remedy, and that it should

not be issued unless the movant's right to relief is clear and unequivocal."  Kikumura v. Hurley, 242

F.3d 950, 955 (10th Cir. 2001)(internal quotations omitted).  To show that the extreme remedy of

a preliminary injunction should issue, "[a] party seeking an injunction from a federal court must

invariably show that it does not have an adequate remedy at law." <u>N. Cal. Power Agency v. Grace Geothermal Corp.</u>, 469 U.S. 1306, 1306 (1984).  Before a district court may issue a preliminary injunction pursuant to rule 65 of the Federal Rules of Civil Procedure, the moving party must establish that: (i) "[it] will suffer irreparable injury unless the injunction issues"; (ii) "the threatened injury . . . outweighs whatever damage the proposed injunction may cause the opposing party"; (iii) "the injunction, if issued, would not be adverse to the public interest"; and (iv) "there is a substantial likelihood [of success] on the merits." <u>Resolution Trust Corp. v. Cruce</u>, 972 F.2d 1195, 1198 (10th Cir. 1992).  <u>See</u> <u>Winter v. Natural Res. Defense Council, Inc.</u>, 129 S. Ct. 365, 374 (2008)("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." (citing <u>Munaf v. Geren</u>, 553 U.S. 674, 688-89 (2008))).  The movant bears the burden of demonstrating that those equitable factors weigh in its favor.  <u>See</u> <u>Automated Mktg. Sys., Inc. v. Martin</u>, 467 F.2d 1181, 1183 (10th Cir. 1972).

"[T]he limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held . . . .'" <u>Schrier v. Univ. of Colo.</u>, 427 F.3d 1253, 1258 (10th Cir. 2005)(quoting <u>Univ. of Tex. v. Camenisch</u>, 451 U.S. 390, 395 (1981)). The United States Court of Appeals for the Tenth Circuit has "identified the following three types of specifically disfavored preliminary injunctions . . . : (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." <u>Schrier v. Univ. of Colo.</u>, 427 F.3d at 1258 (quoting <u>O Centro Espirita Beneficente Uniao Do Vegetal v.</u>

Ashcroft, 389 F.3d 973, 977 (10th Cir. 2004)(en banc), aff'd on other grounds, 546 U.S. 418, 126 (2006))(internal quotation marks omitted).  Accord Westar Energy, Inc. v. Lake, 552 F.3d 1215, 1224 (10th Cir. 2009)(citing O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d at 975).  With respect to preliminary injunctions that will change the status quo, "the movant has an even heavier burden of showing that the four factors listed above weigh heavily and compellingly in movant's favor before such an injunction can be issued." Salt Lake Tribune Publ'g Co. v. AT&T Corp., 320 F.3d 1081, 1099 (10th Cir. 2003)(quoting SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098-99 (10th Cir. 1991))(internal quotation mark omitted).

"[I]n an action for money damages, the district court does not have the power to issue a preliminary injunction . . . ." U.S. ex rel. Rahman v. Oncology Assocs., 198 F.3d 489, 495-96 (4th Cir. 1999)(citing Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 324-25 (1999)).  See Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418-20 (8th Cir. 1987)(finding that a preliminary injunction should not issue where a remedy of money damages was available).  Federal courts have the inherent equitable power to issue a preliminary injunction only when it is necessary to protect a movant's entitlement to a final equitable remedy.  See De Beers Consol. Mines v. United States, 325 U.S. 212, 219-23 (1945); Reebok Int'l, Ltd, v. Marnatech Enter., Inc., 970 F.2d 552, 559-60 (9th Cir. 1992).

## ANALYSIS

POP Diesel contends that the balance of equities tips in its favor, particularly since it seeks only to maintain the status quo pending trial on the merits; and an injunction is not only not against the public interest, but in fact decidedly in favor of it.  POP Diesel further contends that it is likely to prevail on the merits.  Finally, POP Diesel argues that, absent a preliminary injunction, the

promulgation of the Draft ASTM Triglyceride Standard and the Fit-for-Purpose Guidelines will irreparably harm POP Diesel, as well as competition in the Relevant Markets.  The Defendants respond that POP Diesel's alleged harm is not sufficiently imminent or certain to justify a preliminary injunction, nor is its supposed harm irreparable.

The Court concludes that POP Diesel will not be irreparably harmed if the Court does not impose a preliminary injunction, because the harm it alleges will flow from the approval of the Draft ASTM Triglyceride Standard or the Fit-for-Purpose Guidelines is not imminent.  A plaintiff suffers irreparable harm "when the court would be unable to grant an effective remedy after a full trial because such damages would be inadequate and difficult to ascertain." Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 269 F.3d 1149, 1156 (10th Cir. 2001)(citing Kikumura v. Hurley, 242 F.3d at 963). See Union Nat. Life Inc, Co. v. Tillman, 143 F. Supp. 2d 638, 645 (N.D. Miss 2000)("Irreparable harm exists even where economic rights are involved, when the nature of those rights makes establishment of the dollar value of the loss . . . especially difficult or speculative.")(internal quotation marks omitted).  Potential destruction of the plaintiff's business has long been recognized as an irreparable harm justifying injunctive relief.  See Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373, 1382 (6th Cir. 1995); Fla. Businessmen for Free Enter. v. City of Hollywood, 648 F.2d 956, 958 n.2, n.3 (5th Cir. 1981); Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977);  Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1205 (2d Cir. 1970); Nat'l Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647 (5th Cir. 1962).

Upon approval of the Draft ASTM Triglyceride Standard or the Fit-for-Purpose Guidelines, POP Diesel contends that it will be irreparably harmed, because it will be wrongfully excluded from

-16-

the Relevant Markets, with consequent loss of reputation, good will, marketing potential, and ability to meet its current and future contractual obligations to customers -- in sum the complete destruction of its business. See Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 269 F.3d at 1156 (affirming a preliminary injunction where denial of injunctive relief would result in plaintiff's "loss of reputation, good will, marketing potential, and ability to meet its contractual obligations to [its customers]").  POP Diesel asserts that: (i) ASTM's adoption of the Draft ASTM Triglyceride Standard and the Fit-for-Purpose Guidelines will irreparably harm competition in the Relevant Markets, because POP Diesel and other existing and potential suppliers of triglyceride diesel fuel will be hindered and excluded from participation in the Relevant Markets; (ii) such exclusion will harm consumers in the Relevant Markets, because they will be deprived of the choice of triglyceride diesel fuel, a product POP Diesel argues is less expensive and hazardous and more environmentally friendly than petroleum-based diesel fuel; (iii) innovation in the Relevant Markets will be curtailed and discouraged, because the Draft ASTM Triglyceride Standard and the Fit-for-Purpose Guidelines will impede and prevent introduction of triglyceride diesel fuel and other new, non-petroleum-derived products; and (iv) the Defendant Oil Companies, which have an interest in preserving a fossil fuel-based economy, will continue to dominate the industry. See Memorandum at 23.

The Defendants respond that the Draft ASTM Triglyceride Standard is at least two steps away from being approved for publication.  It remains subject to a main committee vote at ASTM on POP Diesel's -- and two other -- negative votes, publication approval by ASTM's Committee on Standards, plus avenues of appeal, which ensure that due process is provided.  The Fit-For-Purpose Guidelines remain in the drafting stages, and are not currently scheduled for ballot -- and POP

-17-

Diesel's negative ballot as to one was found persuasive, sending that item back to the drafting process. ASTM argues that, like with the Draft ASTM Triglyceride Standard, ASTM's procedures will provide ample opportunity for POP Diesel to raise and advocate any objections to the Fit-For-Purpose Guidelines.

At the hearing, ASTM stated that the ballot would be open for thirty days, after which time the ASTM Committee on Standards would have sixty days in which to review the process to make certain that there were no procedural irregularities. See Tr. at 29:5-13 (Edward). POP Diesel would have the right to take an appeal the D02 committee's decision to the Committee on Standards, which could not be heard before October 2011, and, failing there, to the ASTM Board of Directors, which could not be heard before April 2012. See Tr. at 32:3-18 (Edward). The Draft ASTM Triglyceride Standard would not become law while the appeal was pending, giving POP Diesel the ability to forestall the Draft ASTM Triglyceride Standard from becoming law for at least thirteen months. See Tr. at 32:19-21, 34:1 (Court, Edward). In light of ASTM's representations, POP Diesel acknowledged that it did not face imminent injury. See Tr. at 42:4-10 (Court, Shulman). POP Diesel further conceded that a preliminary injunction would be unnecessary if the Court could put this case on a fast schedule. See Tr. at 42:11-19 (Court, Shulman). POP Diesel agreed that the Court could deny its Motion without prejudice to POP Diesel renewing the Motion if the Court is unable to move the case along at an adequate pace. See Tr. at 43:23-44:20 (Court, Shulman). Because POP Diesel does not face imminent injury, the Court denies its Motion without prejudice to POP Diesel renewing its Motion if the case is not proceeding at an adequate pace.

**IT IS ORDERED** that Plaintiff's Motion and Application for Temporary Restraining Order and Order to Show Cause, filed February 1, 2011 (Doc. 5), is denied without prejudice to Plaintiff

-18-

Plant Oil Powered Diesel Fuel Systems, Inc. renewing its motion if this case is not proceeding at an adequate pace to allow it to have the Court decide it on the merits before the Draft ASTM Triglyceride Standard is adopted.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Daniel Rees Shulman
Jeremy Lloyd Johnson
Julie Boehmke
Gray Plant Mooty Mooty & Bennett, PA
Minneapolis, Minnesota

-- and --

David J Jaramillo
Maria E Touchet
The Gaddy Jaramillo Law Firm
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

David F. Cunningham
Thompson, Hickey, Cunningham, Clow, April & Dolan, P.A.
Santa Fe, New Mexico

-- and --

Julian Brew
Los Angeles, California

      *Attorneys for Defendant ExxonMobil Corporation*

Andrew G. Schultz
Rodey, Dickason, Sloan, Akin & Robb, P. A.
Albuquerque, New Mexico

-- and --

D. Bruce Hoffman
David A Higbee
Ryan Shores
Hunton & Williams LLP
Washington, DC

-- and --

Thomas G Slater
Hunton & Williams LLP
Richmond, Virginia

      *Attorneys for Defendant Chevron Corporation*

George S Cary
Steven J Kaiser
Cleary Gottlieb Steen & Hamilton LLP
Washington, DC

-- and --

Michael B. Campbell
Campbell Trial Law, LLC
Santa Fe, New Mexico

      *Attorneys for Defendant Chevron Corporation Conocophillips*

John B Pound
Long, Pound & Komer, P.A.
Santa Fe, New Mexico

-- and --

Mark P Edward
R. Brendan Fee
Morgan, Lewis & Bockius LLP
Philidelphia, Pennsylvania

-- and --

Thomas B. O'Brien
ASTM International
West Conshohocken, Pennsylvania

*Attorneys for Defendant ASTM International*

Daniel Laytin
Leslie S Garthwaite
Leslie M Smith
Sandra Maja Fabula
Kirkland & Ellis LLP
Chicago, Illinois

-- and --

John R. Cooney
Zachary L. McCormick
Modrall Sperling Roehl Harris & Sisk PA
Albuquerque, New Mexico

*Attorneys for Defendant BP Products North America, Inc.*