## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PLANT OIL POWERED DIESEL FUEL SYSTEMS, INC.,

      Plaintiff,

vs.                                                                            No. CIV 11-0103 JB/WPL

EXXONMOBIL CORPORATION; ROYAL DUTCH
SHELL, PLC; BP, PLC; CHEVRON CORPORATION;
CONOCOPHILLIPS; ASTM INTERNATIONAL f/k/a
AMERICAN SOCIETY FOR TESTING AND
MATERIALS; BP PRODUCTS NORTH AMERICA, INC.;
and CHEVRON USA, INC.

      Defendants.

## <u>MEMORANDUM OPINION OR ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion to Reconsider

Dismissal with Prejudice and for Leave to File a Third Amended Complaint, filed August 23, 2011

(Doc. 96)("Motion for Reconsideration"); (ii) the Plaintiff's Motion for Leave to File Consolidated

Reply Brief One Day out of Time Due to CM/ECF Computer Snafu, filed September 20, 2011 (Doc.

103)("Motion for Leave"); and (iii) Defendant ASTM International's Motion to Strike Parts of

Plaintiff's Consolidated Reply in Support of Its Motion for Reconsideration, or, in the Alternative,

for Leave to File a Sur-Reply, filed October 4, 2011 (Doc. 106)("Motion to Strike").  The Court held

a hearing on December 15, 2011.  The primary issues are: (i) whether the Court should strike

Plaintiff Plant Oil Powered Diesel Fuel Systems, Inc's ("POP Diesel") filings because Claude J.

Convisser, the one who filed them, is not licensed to practice before the Court, he has not moved

for permission to practice before the Court, he has entered his appearance only as POP Diesel's "pro

se representative," and POP Diesel's licensed counsel have not signed the motions; (ii) whether the

Court should reconsider its holdings in its Memorandum Opinion and Order, filed July 21, 2011 (Doc. 84)("July 21, 2011 MOO"); and (iii) whether the Court should strike as untimely filed the new arguments in support of reconsideration presented in the Plaintiff's Consolidated Reply to the Defendants' Opposition to Its Motion to Reconsider Dismissal with Prejudice and for Leave to File a Third Amended Complaint, filed September 20, 2011 (Doc. 102)("Reply"). The Court concludes that Mr. Convisser cannot represent POP Diesel, but the Court also sees no sound reason to strike his filings. Because the Defendants do not object to the late filing of the Reply, the Court will grant leave to file it, but will deny the Motion for Reconsideration. The Court will also deny the Motion to Strike.

## FACTUAL BACKGROUND

POP Diesel develops, manufactures, and sells triglyceride diesel fuel -- fuel consisting of vegetable oil and animal fat -- and related equipment that permits and manages the use of triglyceride diesel fuel in residential, commercial, and industrial burners and in diesel engines. See Second Amended Complaint Jury Demand ¶ 1, at 2, filed April 1, 2011 (Doc. 1)("Second Amended Complaint"). POP Diesel also owns and operates a state-licensed triglyceride-diesel-fuel processing and filling station in the State of New Mexico, which it opened in 2006 as the first such station in the United States of America. See Second Amended Complaint ¶ 4, at 3.

Defendants ExxonMobil Corporation and ConocoPhillips Company (together "the Defendant Oil Companies"), are two of the world's largest producers and sellers of petroleum-based diesel fuel, which competes with triglyceride diesel fuel, but which POP Diesel alleges is inferior to triglyceride diesel fuel for use in burners and diesel engines, for reasons of cost, performance, product safety, and environmental impact. Second Amended Complaint ¶¶ 7-9, at 3-4. Each of the Defendant Oil Companies is a member of ASTM International, one of the largest standard-setting organizations

in the world.  See Second Amended Complaint ¶¶ 8, 11-15, at 4-5.  ASTM International promulgates quality standards for many products, including fuel oils, which have been adopted by reference in federal and state statutes throughout the United States, including New Mexico.  See Second Amended Complaint ¶ 13, at 4.  ASTM International's "membership is composed of three categories: producers, consumers, and general interest (academic, etc.) . . . [and] [i]ts specifications are written by technically qualified committees composed of members from the three categories." Application of Am. Soc'y for Testing & Materials, 231 F.Supp. 686, 688 (E.D. Pa. 1964).

This case involves ASTM International's promulgation, with the Defendant Oil Companies' alleged involvement, of a proposed new standard and guidelines for biofuels that would limit the use of triglyceride diesel fuel and related products, including those of POP Diesel.  POP Diesel alleges that the Defendants conspired with numerous other entities.  See Second Amended Complaint ¶¶ 17-19, at 5-6.  POP Diesel asserts that the co-conspirators of which it knows include certain members of ASTM International's Triglyceride Burner Fuel Working Group and Subcommittee P of ASTM Committee D02, including: (i) the National Biodiesel Board and Ralph F. Turner, Chair of the Triglyceride Burner Fuel Working Group, acting on behalf of biodiesel interests; (ii) Barbara Parry and Steve Spence of Newalta, acting on behalf of interests connected with recycled engine oil for burners; (iii) Marie F. Calhoon of Transmontaigne Inc., acting on behalf of interests connected with the petroleum industry; and (iv) other members of the Triglyceride Burner Fuel Working Group and Subcommittee P of ASTM Committee D02.  See Second Amended Complaint ¶ 18, at 6.  POP Diesel contends that the co-conspirators and the Defendant Oil Companies all have an economic interest in the exclusion of triglyceride diesel fuel from the relevant markets, because

triglyceride diesel fuel may tend to displace competing products manufactured,

> marketed, or promoted by the co-conspirators, including petroleum-based diesel fuel, recycled engine oil, and so-called biodiesel, a blend of 95 percent petroleum-based diesel fuel and 5 percent of a substance that starts out as triglycerides, but the molecules of which end up being physically and chemically transformed into a different substance . . . . Specifically, the co-conspirators are primarily affiliated with and representatives of petroleum companies, including, but not limited to, the Defendant Oil Companies; corporate agricultural interests that have invested heavily in biodiesel production facilities; companies that collect and render waste triglycerides, which have also invested heavily in biodiesel production facilities; sellers of petroleum fuel oil and recycled engine oil for use in burners; manufacturers and sellers of biodiesel; and related interests that service petroleum and biodiesel producers.

Second Amended Complaint ¶ 17, at 5-6.

### 1.      The Relevant Markets.

The relevant product and geographic markets for purposes of this action are: (i) the diesel fuel market for residential, commercial, and industrial burners in the United States, and (ii) the diesel fuel market for diesel engines in the United States ("the Relevant Markets").   Second Amended Complaint ¶ 21, at 7.   POP Diesel competes in the Relevant Markets against the Defendant Oil Companies, as well as against other producers and sellers of diesel fuel.  See Second Amended Complaint ¶ 24, at 7.

### 2.      The Draft ASTM Triglyceride Standard.

ASTM International's largest committee, titled D02, Petroleum Products and Lubricants ("Committee D02"), of which the Defendant Oil Companies are members, promulgates standards, specifications, classifications, test methods, and guidelines for liquid fuels in the diesel fuel industry. Second Amended Complaint ¶¶ 8, 10, 15, at 4-5.  To date, Committee D02 has approved for mixing with petroleum-based diesel fuel a non-petroleum blend stock, commonly known as "biodiesel," that meets ASTM Standard Specifications Biodiesel Fuel Blend Stock B100 for Middle Distillate Fuels D6751.  Second Amended Complaint ¶ 33, at 9.  ASTM Standard Specifications D396 and D975

approve up to five percent biodiesel blended with petroleum-based diesel fuel for use in burners and diesel engines, respectively.  See Second Amended Complaint ¶ 33, at 9.

POP Diesel alleges that, because of the five-percent cap, biodiesel represents only an incremental step in reducing net greenhouse gas emissions as compared with the near one-hundred percent use of triglyceride diesel fuel POP Diesel's equipment permits.  See Second Amended Complaint ¶ 35, at 10.  The Defendant Oil Companies do not oppose biodiesel, which poses no threat to petroleum-based diesel fuel because of the five-percent cap.  See Second Amended Complaint ¶ 35, at 10.  POP Diesel contends that supporting the five-percent cap on biodiesel in ASTM Standard Specifications D396 and D975 allows the Defendant Oil Companies to portray themselves as favoring renewable energy.  See Second Amended Complaint ¶ 35, at 10.  POP Diesel further contends that biodiesel blended with petroleum fuels makes use of existing pipeline, rail, road and other infrastructure, whereas "triglyceride diesel fuel is handled, transported, and stored in equipment that is apart and segregated from the infrastructure supporting petroleum."  Second Amended Complaint ¶ 35, at 10.  Without federal tax incentives, which expired at the end of 2009, the manufacture of biodiesel is largely not cost-effective or economically or commercially feasible, and many biodiesel facilities today are sitting idle.  See Second Amended Complaint ¶ 36, at 10.

Several years ago, burner manufacturers seeking insurance coverage for the use of triglyceride diesel fuel asked ASTM Committee D02 to develop a standard for triglyceride diesel fuel to be used in burners.  See Second Amended Complaint ¶ 37, at 10.  Underwriters Laboratories, an insurance actuarial firm, would not rate burners using triglyceride diesel fuel, and some insurers therefore would not offer coverage, unless and until ASTM International first adopted a standard specification for triglyceride diesel fuel for burners.  See Second Amended Complaint ¶ 37, at 10-11.  Various subcommittees of Committee D02 refused to adopt a specification for triglyceride diesel

fuel burners.  See Second Amended Complaint ¶ 39, at 10.  POP Diesel alleges that this refusal is the result of the petroleum-based diesel fuel interests that dominate these subcommittees and that these interests "oppose any standard for triglyceride diesel fuel that may lead to triglyceride diesel fuel's supplanting petroleum-based diesel fuel."  Second Amended Complaint ¶ 38, at 11.  The request was then referred to Committee D02's Subcommittee P, Recycled Petroleum Products (the "Subcommittee").  Second Amended Complaint  ¶ 40, at 11.  The Subcommittee established a Triglyceride Burner Fuel Working Group (the "Working Group").  Second Amended Complaint ¶ 40, at 11.  "The Defendant Oil Companies, either directly or indirectly, are all members of or active participants in the D02 Committee, the Subcommittee, and the Working Group," and, POP Diesel alleges, each has an interest in preserving the status quo embodied in ASTM Standard Specifications D396 -- for burners -- and D975 -- for diesel engines -- with the five-percent biodiesel cap.  See Second Amended Complaint  ¶ 41, at 11-12.

The Subcommittee and the Working Group have created and approved the Draft ASTM Triglyceride Standard.  Second Amended Complaint ¶ 42, at 12.  POP Diesel asserts that the Draft ASTM Triglyceride Standard contains numerous, material misstatements of fact made with the purpose and effect of excluding sellers of triglyceride diesel fuel and related products, including POP Diesel, from the Relevant Markets.  See Second Amended Complaint ¶ 44, at 12-17.  During the June 2010 ASTM International semi-annual meeting, POP Diesel's President, Mr. Convisser, voiced objections to the Draft ASTM Triglyceride Standard at the meetings of both the Working Group and the Subcommittee.  See Second Amended Complaint ¶¶ 45-47, at 17.  During Mr. Convisser's comments at the Working Group meeting, ExxonMobil stated that it would vote against the Draft ASTM Triglyceride Standard if ASTM deleted the alleged misrepresentation in Section 1.2 -- that "[t]h[e fuels specified herein] are not intended for use" in residential and smaller burners,

diesel internal combustion engines, and marine applications -- to which Mr. Convisser had objected. Second Amended Complaint ¶ 48, at 18. Mr. Convisser subsequently provided the Working Group and Subcommittee with written objections to the Draft ASTM Triglyceride Standard. See Second Amended Complaint ¶ 47, at 17. Mr. Convisser's oral and written objections described, among other things, the following alleged material misrepresentations in the Draft ASTM Triglyceride Standard:

(i)     Table 1 of the Draft ASTM Triglyceride Standard contains "Detailed Requirements for Triglyceride Burner Fuels," which refers to thirty-eight ASTM-approved test methods allegedly applicable to triglyceride diesel fuel. Second Amended Complaint ¶ 44(a), at 12. These test methods, however, all involve tests for the properties of petroleum-based diesel fuel and have never been validated as having applicability to triglyceride diesel fuel. These test methods thus provide invalid criteria for disqualifying triglyceride diesel fuel from fitness for use in burners. See Second Amended Complaint ¶ 44(a), at 12-13.

(ii)    Section 1.2 of the Draft ASTM Triglyceride Standard states that "[t]he fuels specified herein are not intended for blending with conventional [petroleum] fuel oils for this purpose." Second Amended Complaint ¶ 44(b), at 13. POP Diesel contends this statement is false because triglyceride diesel fuel and petroleum-based diesel fuel used in burners are miscible, meaning that, when stored in a heated tank before combustion, they blend in a homogeneous mixture. POP Diesel further asserts that there is no evidence that burners cannot operate on a blend of triglyceride diesel fuel and petroleum-based diesel fuel, and that such use is common without harm to burner equipment. POP Diesel's burner equipment functions, POP Diesel contends, with any blend of triglyceride diesel fuel and petroleum-based diesel fuel. POP Diesel further contends that ASTM will likely rely on this language when it develops

future specifications for diesel engines.  <u>See</u> Second Amended Complaint ¶ 44(b), at 13-14.

(iii)    Section 1.2 of the Draft ASTM Triglyceride Standard also states that "[the fuels specified herein] are not intended for use in . . . [certain specified burners], such as residential burners or small pressure atomization burners nor are they intended for use in internal combustion engines."  Second Amended Complaint ¶ 44(c), at 14.  POP Diesel asserts, on the contrary, that triglyceride diesel fuel, properly managed, operates in all such burners and diesel internal combustion engines.  <u>See</u> Second Amended Complaint ¶ 44(c), at 14.

(iv)    Sections 5.3.1 and 5.3.2 of the Draft ASTM Triglyceride Standard define triglyceride burner fuel so as to exclude triglyceride diesel fuel that originates from household, non-commercial sources, so as to exclude its use from residential burners.  POP Diesel asserts, on the contrary, that triglyceride diesel fuel can originate from household, non-commercial sources, and, properly managed, is suitable for use in residential burners.  <u>See</u> Second Amended Complaint ¶ 44(d), at 14-15.

(v)    Section 5.3.2 of the Draft ASTM Triglyceride Standard also, according to POP Diesel, falsely states that "[t]he extra equipment and maintenance required to handle this fuel . . . may preclude its use in small and/or unattended installations."  Second Amended Complaint ¶ 44(e), at 14.  POP Diesel asserts, on the contrary, that its burners do not require extra equipment or maintenance or an attendant.  <u>See</u> Second Amended Complaint ¶ 44(e), at 14.

(vi)    The Draft ASTM Triglyceride Standard limits to thirty the total acid number for triglyceride diesel fuel, as set forth in Table 1, and in Sections X1.2 and X1.5.1.  POP Diesel asserts, on the contrary, that when used with its equipment, triglyceride diesel fuel may have an acid number in excess of thirty, and is safe and appropriate for use in residential, commercial, and

-8-

industrial burners.  See Second Amended Complaint ¶ 44(f), at 15.

(vii)    Section X1.4.4.2 of the Draft Standard states that, because "[t]he viscosity of [triglyceride diesel fuel] can change significantly with relatively small temperature differences in the range of temperatures at which the burner operates, . . . burner manufacturers and triglyceride fuel users should consider the viscosity characteristics of the range of potential triglyceride burner fuels very carefully."  Second Amended Complaint ¶ 44(g), at 15.  POP Diesel asserts, on the contrary, that higher viscosity is not a problem for burner and diesel engine equipment that pre-heats triglyceride diesel fuel to lower its viscosity, as does POP Diesel's equipment.  See Second Amended Complaint ¶ 44(g), at 15.

(viii)    Section X1.4.1 of the Draft ASTM Triglyceride Standard states with regards to the temperature at which a substance turns from solid to liquid state: "An increase in pour point can occur when triglyceride burner fuel is subjected to cyclic temperature variations that can occur in the course of storage."  Second Amended Complaint ¶ 44(h), at 16.  POP Diesel asserts, on the contrary, that there is no evidence that such temperature variations lead to a significant change in the pour point of triglyceride diesel fuel.  See Second Amended Complaint ¶ 44(h), at 16-17.

(xi)    Section 1.4 of the Draft ASTM Triglyceride Standard states: "Nothing in this specification shall preclude observance of national or local regulations, which can be more restrictive."  Second Amended Complaint ¶ 44(i), at 17.  POP Diesel contends that there is "no factual basis to suggest that governments may have cause to adopt even more restrictive standards."  Second Amended Complaint ¶ 44(i), at 17.

POP Diesel further asserts that numerous irregularities, and breaches of ASTM's own policies and procedures, have marked the ASTM's Committee D02's, the Subcommittee's, and the

Working Group's approval process for the Draft ASTM Triglyceride Standard.  See Second Amended Complaint ¶ 52, at 18-22.  POP Diesel alleges the following irregularities:

(i)     ASTM's Regulations Governing Technical Committees ("ASTM's Regulations") state in the relevant part of § 19.2.2.4: "Accurate minutes should be kept of all ASTM-sponsored meetings." Second Amended Complaint ¶ 52(a), at 19.  The Bylaws of Committee D02 state at § 9.3.2: "Minutes shall be circulated within 60 days following a meeting."  Second Amended Complaint ¶ 52(b), at 19.  POP Diesel alleges that no minutes were taken or circulated for an ASTM-sponsored meeting of the Working Group in Kansas City, Missouri, in late June 2010, during which ExxonMobil stated that it would vote against the Draft ASTM Triglyceride Standard if the Working Group or Subcommittee deleted language stating triglyceride diesel fuel is not appropriate for residential and smaller burners, diesel internal combustion engines, and marine applications.  See Second Amended Complaint ¶ 52(a), at 19.

(ii)     ASTM's Regulations further states in § 19.2.2.4 that "[t]he minutes of the preceding meeting should be approved before the start of the following meeting." Second Amended Complaint ¶ 52(c), at 19.  Without the Working Group's or the Subcommittee's prior approval, at their meeting on December 8, 2010, the Chair of the Subcommittee appended a set of purported minutes for the June 2010 Working Group meeting to the Subcommittee report to the D02 Committee on the December 9, 2010 Working Group meeting.  The draft of the purported Working Group minutes made no mention of ExxonMobil's statement that it would vote against the Draft ASTM Triglyceride Standard if limiting language was deleted.  See Second Amended Complaint ¶ 52(c), at 19.

(iii)     At the December 9, 2010 meeting, the Working Group's agenda said that the meeting "will

continue until all business is completed." Second Amended Complaint ¶ 52(d), at 20.  While "Committee D02 permitted unlimited discussion and debate on all of the other twenty or so ASTM Standards on the agenda," over POP Diesel's objection, the Committee "voted to submit Convisser's comments accompanying his negative vote on the Draft ASTM Triglyceride Standard to electronic balloting, rather than allow for discussion and debate at the meeting."  Second Amended Complaint ¶ 52(d), at 20.

(iv)     ASTM has not provided material to POP Diesel in response to Convisser's request for access to the data and reports on triglyceride diesel fuel that the Subcommittee and Working Group had considered in formulating the Draft ASTM Triglyceride Standard.  See Second Amended Complaint ¶ 52(e), (f), at 20-21.

(v)     Contrary to the "usual and customary ASTM practice of trying to work through differences prior to an actual committee meeting," the Working Group and Subcommittee did not contact Mr. Convisser following his submission in September of written comments accompanying his negative vote and before  the December meeting.  Second Amended Complaint ¶ 52(g), at 21.  Instead, the Subcommittee contacted Convisser the week before the December meeting and asked him to withdraw his negative comments, which Convisser declined to do.  See Second Amended Complaint ¶ 52(g), at 21.  At the December meeting, the Committee D02 "presented on a large display screen" its responses to Mr. Convisser's objections to the Draft ASTM Triglyceride Standard, but provided no hard copies.  See Second Amended Complaint ¶ 52(h), at 21.

POP Diesel asserts that, "[a]s the world's largest publicly traded international oil and gas company, ExxonMobil has the influence and market power to ensure that ASTM adopts the Draft ASTM Triglyceride Standard in its current form."  Second Amended Complaint ¶ 49, at 18.  POP

Diesel alleges that members of the Subcommittee not affiliated with the Defendant Oil Companies "repeatedly stated that many of Convisser's objections had substantive merit," but nonetheless "refused to adopt and approve any of Convisser's proposed changes because such adoption and approval would antagonize the Defendant Oil Companies." Second Amended Complaint ¶ 52(i), at 21-22. The Subcommittee voted twelve-to-one in favor of adopting the Draft ASTM Triglyceride Standard and forwarding it to Committee D02. See Second Amended Complaint ¶ 53, at 22.

### 3.      The Fit-For-Purpose Guidelines.

POP Diesel also asserts that, in response to its objections, the Defendant Oil Companies have also moved aggressively to have ASTM restrict future approval of triglyceride diesel fuels for diesel engines. See Second Amended Complaint ¶ 55, at 23. POP Diesel alleges that the Defendants have caused Committee D02 to begin the promulgation of "Fit-for-Purpose" Guidelines that limit standards for future diesel engine fuels to petroleum-based diesel fuel or biodiesel, as currently described in ASTM Standard Specification D975. Second Amended Complaint ¶ 55, at 23. These Fit-for-Purpose Guidelines are anticipatory standards governing research and development of future products, in that they specify how a new and potentially as yet undeveloped product must function, and how it must fit with existing products and processes to meet ASTM standards. See Second Amended Complaint ¶ 56, at 23. POP Diesel argues that these Fit-for-Purpose Guidelines are detrimental to innovation, research, and development, in that they tend to limit and channel innovation towards existing products and processes, and protect existing products and processes from future competition. See Second Amended Complaint ¶ 56, at 23.

POP Diesel contends that, like the Draft ASTM Triglyceride Standard, the purpose and effect of the Fit-for-Purpose Guidelines will be to stifle innovation, and to exclude Pop Diesel and other sellers of alternative diesel fuels from the Relevant Markets. See Second Amended Complaint ¶ 59,

at 23.  For example, the Fit-For-Purpose Guidelines' definition of "hydrocarbon oil," a key term, will favor biodiesel, while excluding triglyceride diesel fuel.  Second Amended Complaint ¶ 59, at 23 (a), at 23.  The Fit-For-Purpose Guidelines shift the future burden of validating triglyceride diesel fuel to its producers, small firms that cannot afford the testing that it is the function of ASTM to provide.  See Second Amended Complaint ¶ 59, at 23, at 24-25.  Like the Draft ASTM Triglyceride Standard, the Fit-For-Purpose Guidelines rely on standards and tests applicable to petroleum-based diesel fuel, with no proven applicability to triglyceride diesel fuel.  See Second Amended Complaint ¶¶ 59(c)-(d), at 26-28.  POP Diesel alleges that ConocoPhillips is the technical contact for parts of the Fit-for-Purpose Guidelines, see Second Amended Complaint ¶ 59(a)-(b), at 24, and that a "former employee of ExxonMobil is actively participating in the drafting" a related guideline, see Second Amended Complaint ¶ 59(c), at 25.  POP Diesel contends, upon information and belief, that the Defendant Oil Companies may have other Fit-for-Purpose Guidelines in some stage of ASTM development unknown to POP Diesel that have the same purpose and effect as they attribute to the Guidelines.  See Second Amended Complaint ¶ 62, at 27.

In sum, POP Diesel alleges that, in concert, the Defendant Oil Companies and ASTM are in the process of promulgating the Draft ASTM Triglyceride Standard and the Fit-for-Purpose Guidelines with the purpose and effect of excluding triglyceride diesel fuel and POP Diesel's products from the Relevant Markets.  See Second Amended Complaint ¶¶ 63-64, at 30.  The Defendants intend imminently to present the Draft ASTM Triglyceride Standard to the Committee D02 membership for a vote on its adoption.  See Second Amended Complaint ¶ 43, at 12.  Once the Draft ASTM Triglyceride Standard is adopted and published, numerous states will incorporate it by reference into law pursuant to existing statutes, such as N.M.S.A. 1978, § 57-19-29.  See Second Amended Complaint ¶ 13, at 4.

## PROCEDURAL BACKGROUND

In its July 21, 2011 MOO, the Court dismissed all of POP Diesel's antitrust conspiracy claims because it failed to state a cognizable claim in several respects. The Court noted that "POP Diesel offers little more than threadbare allegations in support of its antitrust conspiracy claims," July 21, 2011 MOO at 42, and that its allegations in the Second Amended Complaint fail to state "enough factual matter (taken as true) to suggest that an agreement was made," July 21, 2011 MOO at 43. The Court rejected POP Diesel's suggestions that the facts that (i) "Exxonmobil objected to changing the Draft ASTM Triglyceride Standard," (ii) "the [June 2010] meeting minutes were procedurally deficient and incomplete, and that [POP Diesel] was not allowed unlimited comment and debate at the December 2010 meeting," and (iii) "the Defendant Oil Companies participated in standard-setting activities" provided evidence of an antitrust conspiracy. July 21, 2011 MOO at 43-44, 51. The Court held that "POP Diesel fails to allege facts plausibly suggesting that the Defendants 'had a conscious commitment to a common scheme designed to achieve an unlawful objective.'" July 21, 2011 MOO at 46 (citing Abraham v. Intermountain Health Care, Inc., 461 F.3d at 1257). The Court also held that "POP Diesel has not set forth plausible allegations suggesting why these multifaceted interests would enter into an unlawful agreement to exclude POP Diesel from the market." July 21, 2011 MOO at 53. In addition, the Court held that POP Diesel had "not adequately alleged an anti-competitive effect," based on POP Diesel's admissions and allegations in its Second Amended Complaint that,

> notwithstanding the incorporation of ASTM standard into N.M.S.A. 1978, § 57-19-29A . . . and notwithstanding that its product does not meet the standards "last adopted and published by [ASTM]," SAC 32, at 8-9, it "competes in the Relevant Markets against the Defendant Oil Companies, as well as other producers and sellers of diesel fuel," SAC ¶ 24, at 7.

July 21, 2011 MOO at 47-48.

The Court entered a final judgment in the Defendants' favor on July 21, 2011.  See Doc. 85. At some point between that date and August 22, 2012, POP Diesel terminated the employment of its former legal counsel from Minnesota, but the Gaddy Jaramillo Law Firm still represents it as local counsel.  See Plaintiff's Motion for Leave for Its Former Counsel Gray Plant Mooty Mooty & Bennett, P.A. to Withdraw, filed August 22, 2011 (Doc. 94).  Mr. Convisser, an attorney who is not licensed as a member of the Federal Bar, but who is POP Diesel's President and General Counsel, filed a document purporting to enter his appearance as POP Diesel's "pro se representative" on August 22, 2011.  Entry of Appearance of Claude D. Convisser on Behalf of Plaintiff Plant Oil Powered Diesel Fuel Systems, Inc., filed August 22, 2011 (Doc. 93).  Mr. Convisser did not follow the procedures necessary, however, either to appear as counsel in this action, or to file and serve documents electronically.  See D.N.M.LR-Civ. 83.3 (July 2011)[1] (requiring attorney who "is not a member of the Federal Bar" to either "associate with a member of the Federal Bar" who must certify that the "non-member attorney is a member in good standing of the bar of a state" or "apply to practice in accordance with D.N.M.LR-Civ. 83.2.").  Although Maria Touchet of the Gaddy Jaramillo Law firm, who is a member of the Federal Bar in New Mexico, formally associated with, and submitted the necessary certification for, POP Diesel's former Minnesota counsel, see Doc. 3; Doc. 21; Doc. 46, and has signed every pleading or document filed on behalf of POP Diesel before Mr. Convisser became involved in this suit as purported counsel, local counsel has not co-signed or filed any of the motions or responses that Mr. Convisser filed.

In apparent recognition that he cannot participate in the proceedings in this matter as an attorney representing POP Diesel without following the local rules, in one of his briefs, Mr.

---

[1]The Local Rules were amended, effective January 1, 2012, but the Court has quoted the rules in effect at the time Mr. Convisser entered his appearance.

Convisser states that he

> is not a member of the bar of this Court; he is conducting this suit pro se as an officer
> of the POP Diesel corporation. . . . . He has never given legal advice or served as
> counsel in an antitrust suit before he entered his pro se appearance on behalf of the
> corporation which employs him.

Reply at 18 n.6.

No party has filed a notice of appeal.  Instead, Mr. Convisser filed: (i) on August 22, 2011,

the Motion to Accept Filings Under Rule 59(e) (Doc. 95); and (ii) on August 23, 2011, the Motion

for Reconsideration (Doc. 96) thirty-three days after entry of the final judgment.  The Court has

denied Mr. Convisser's Motion to Accept Filings Under Rule 59(e) on August 22, 2011, in a

separate opinion.  See Memorandum Opinion and Order, filed March 8, 2012 (Doc. 113).  ASTM

International moved to strike portions of Mr. Convisser's Reply, because he raised new arguments

for the first time in the Reply.  See Motion to Strike at 1-2.

POP Diesel seeks relief from the Court's July 21, 2011, dismissal of POP Diesel's antitrust

claims with prejudice "with regards only to defendants ASTM and ExxonMobil," based on an

assertion that POP Diesel's former counsel, Gray Plant Mooty Mooty & Bennett, P.A. (hereinafter

"the firm"), "failed to competently present its claims and handle" the case.  Plaintiff's Memorandum

in Support of its Motion to Reconsider Dismissal with Prejudice and for Leave to File a Third

Amended Complaint at 1, 3, filed August 23, 2011 (Doc. 97)("Memorandum Motion to

Reconsider").  Specifically, POP Diesel asserts that the firm: (i) "elected to name an overseas party

as a defendant" and then used its first opportunity to amend the complaint "to correct a mistake of

its own fabrication," Memorandum Motion to Reconsider at 3-4; (ii) "drafted a less-than-plausible

antitrust conspiracy into the second amended complaint," Memorandum Motion to Reconsider at

4; (iii) "filed an incompetent response brief (Document 74) to the defendants' motions to dismiss

the second amended complaint," because the response brief

> failed to explicate the most obvious evidence of the conspirators' unlawful intent and POP Diesel™'s most grievous antitrust injury, the basing of the ASTM Triglyceride Burner Fuel Standard on inapplicable and completely unproven test protocols and the inclusion in it of atypical and unnecessary restrictive language on the use of triglyceride diesel fuel in diesel engines of all kinds,

"neglected to set forth a proper agency theory by which ASTM would be a part of the antitrust conspiracy," and

> completely undercut POP Diesel™'s reason for filing this suit in the first place by turning the law on its head and stating falsely that the ASTM Triglyceride Burner Fuel Standard would not be incorporated by reference into New Mexico law and thereby unreasonably restrict POP Diesel™'s products from the relevant markets,

Memorandum Motion to Reconsider at 3-4; and (iv) failed "to keep to hearings . . . scheduled and to communicate to the Court their availability for such hearings," Memorandum Motion to Reconsider at 3-4.  POP Diesel contends that "[t]his carelessness justifiably left the Court scratching its head about an implausible set of bedfellows that ostensibly included burner manufacturers who seemingly would have favored development of such a Standard, but which burner manufacturers do not exist as instigators of any ASTM Standard in factual reality."  Memorandum Motion to Reconsider at 10.

ExxonMobil argues that "the Tenth Circuit has specifically held that allegations that a judgment was the result of the moving party's attorney's malpractice are not a basis for relief under Rule 60(b)," and that POP Diesel was "already pursuing the 'preferred' remedy of a legal malpractice lawsuit against its former counsel."  Defendant ExxonMobil Corporation's Opposition to Motion to Reconsider Dismissal with Prejudice and for Leave to File Third Amended Complaint at 5-6, filed September 13, 2011 (Doc. 101)("ExxonMobil Response").  ExxonMobil also posits that,

> [t]o the extent Plaintiff argues that relief is justified based on 'newly discovered evidence' under Rule 60(b)(2), that argument would fail for the independent reason

-17-

that Plaintiff concedes it had the evidence and gave it to its prior counsel prior to the judgment, and certainly in time to move for a new trial under Rule 59(b).

ExxonMobil Response at 6 n.2.

ASTM International asserts that POP Diesel

does not even argue that any of the specific circumstances enumerated in Rule 60(b)(1) through 60(b)(5) are present here. Instead, POP Diesel relies on Rule 60(b)(6), which allows a court to provide relief from a judgment if justified by exceptional circumstances not enumerated by the other parts of Rule 60(b),

and that "carelessness of its counsel . . . cannot qualify as an extraordinary circumstance under Rule 60(b)." Defendant ASTM's Memorandum of Law in Opposition to Plaintiff's Motion to Seek Untimely Reconsideration of the Court's July 21, 2011 Order at 2, filed September 2, 2011 (Doc. 99)("ASTM Response"). ASTM International further noted that the POP Diesel's Motion for Reconsideration and Memorandum Motion to Reconsider did

not allege that there was any fraud, misrepresentation or misconduct on the part of the Defendants in this action, see Fed. R. Civ. P. 60(b)(3), nor does it allege that there is any newly discovered evidence that would justify opening the judgment dismissing POP Diesel's claims. See Fed. R. Civ. P. 60(b)(2). To the contrary, POP Diesel says that the evidence it argues supports its claims was "obviously known to [its] lawyers," even "before they agreed to take the representation," but that those lawyers did not fully or effectively use it. (Dkt. 97, pp. 5-6).

In short, then, any relief POP Diesel would be seeking under 60(b) would have to be premised upon either some sort of "excusable neglect" as enumerated in Rule 60(b)(1) or the provision in Rule 60(b)(6) to which POP Diesel points and that applies to "any other reason justifying relief from the operation of the judgment." In either case, the basis for POP Diesel's Rule 60(b) motion would apparently be the supposed negligence of its Minnesota counsel. As this Court has explained, however, relief from a final judgment is available under Rule 60(b)(1) only "'(1) when a party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when a judge has made a substantive mistake of law or fact…." Thompson v. THI of New Mexico, No. 05-1331, 2008 U.S. Dist. LEXIS 108726, at *35-36 (D.N.M. Dec. 24, 2008)(quoting Yap v. Excel Corp., 186 F.3d 1222, 1231 (10th Cir. 1999)).

ASTM Response at 12-13.

Mr. Conviser filed a Reply[2] on behalf of POP Diesel.  In it, he attempted to remedy the deficiencies that the Defendants pointed out and raised the following new bases for reconsideration: "[under rule 60](b)(1), for mistake of law [and] . . . for excusable neglect; subsection (b)(2), for newly discovered evidence that has arisen since the deadline for filing a motion under Rule 59(b)." Reply at 2.  He also argued that reconsideration was appropriate under rule 60(b)(6) for "'other reason that justifies relief.'"  Reply at 2.

Mr. Conviser's newly discovered evidence consists of two items.  The first item is ASTM International's admission -- revealed to Mr. Conviser on August 24, 2011 -- conclusively confirming his allegation that the 2002 University of Georgia report that Turner, the technical expert and Chair of Subcommittee P, had earlier produced to POP Diesel is "the only comprehensive document that was available to the working group containing data and experimental results."  Reply at 8-9.  POP Diesel contends that this 2002 report does not support the Triglyceride Burner Standard, and that this admission "corrects the misleading impression left by Mr. Turner of a broad factual basis for adopting the [standard]," and supplies evidence to support the antitrust conspiracy.  Reply at 8-9.  POP Diesel asserts that this admission conclusively demonstrates that "there was no evidence to justify the restrictions stated in the Standard," and from this fact, a jury could infer that "the true allegiance of members of this Subcommittee," was to the petroleum diesel-fuel industry and against triglyceride diesel-fuel proponents.  See Reply at 12-13.

The second piece of "newly-discovered evidence" is Subcommittee P's minutes of its June

---

[2] By consolidating his reply briefs, Mr. Conviser is in violation of the United States District Court for the District of New Mexico's Administrative Order No. 92-88, issued May 4, 1992. That Administrative Order requires all parties to submit separate responses and replies addressing each motion that has been filed so that the automated filing system may properly track the motions, responses, and replies.

20, 2007 minutes, which Mr. Convisser contends in his briefing were never posted on ASTM International's website but were included in ASTM International's submissions during the administrative appeals process on August 24, 2011.  See Reply at 4-6.  POP Diesel contends that an attachment to these minutes "reveal[s] the paltry level of Mr. Turner's experience with triglyceride diesel fuel which, questionably, qualified him in the defendants' eyes to serve as ASTM's technical contact on triglyceride diesel fuels and the Triglyceride Working Group Chair."  Reply at 6.  POP Diesel contends that this evidence "is not only impeaching, it also stands in stark contrast with his expertise with, preference for, and loyalty to another fuel, biodiesel," and "shows where Mr. Turner's true orientation lies."  Reply at 6.

POP Diesel contends that, if it had known about the admission and had seen Turner's report "at the time it was drafting its second amended complaint in March 2010, POP Diesel™ would have been able to depict the antitrust conspiracy in more detailed and believable terms," thereby avoiding summary judgment.  Reply at 3.  POP Diesel further states:

> Although direct evidence of an agreement to engage in an antitrust conspiracy, including ExxonMobil, may only surface in formal discovery, the newly discovered evidence sheds circumstantial light on the skeleton of such an agreement.  Proposed third amended complaint, draft of Sept. 19, 2011, para's 15, 18, 46-47, 50(e) and (f), 51, and 53 (Exhibit 1).
>
> A third amended complaint, in which the newly discovered evidence would credibly expose the subterfuge perpetrated by members of Subcommittee P and the interests they serve, would likely survive the defendants' motion to dismiss.

Reply at 14.

POP Diesel's second new basis for reconsideration raised in the Reply regards the Court's alleged mistake of law in concluding that POP Diesel "had not pleaded an anti-competitive effect."  Reply at 16.  In support, POP Diesel states:

> This Court, relying on a mistaken and unauthorized presentation made by POP

-20-

Diesel™'s prior counsel, held that the New Mexico Petroleum Product Standards Act, New Mexico Code Chapter 57, Article 19 ("the statute"), does not include triglyceride diesel fuel within its scope and hence, the publication of the Standard would not have the effect of law in New Mexico.

Reply at 15.  POP Diesel is referring to footnote 6 on pages 47-48 of the Court's July 21, 2011

opinion, in which the Court states:

> POP Diesel contends that "Section 57-19-29, and, for that matter, all of Article 19 of Chapter 57, pertains to petroleum products, which of course POP Diesel[ ] does not supply." Response at 33.  This assertion is a curious response in light of POP Diesel's reliance in its SAC on N.M.S.A. 1978, § 57-19-29A's incorporation of ASTM standards to show an anti-competitive effect.  <u>See</u> SAC ¶ 51, at 18 ("Once it is adopted and published, numerous states will incorporate it by reference into law pursuant to existing statutes, similar to New Mexico Statutes Annotated 57-19-29(A) (1978).").  Nonetheless, the statement underscores that POP Diesel has not adequately alleged an anti-competitive effect because it has not adequately alleged how the ASTM standards will affect its business.

July 21, 2011 MOO at 47-48, n.6 (alteration original).  The alleged error of law is also based on the

Court's statement that,

> [b]ecause POP Diesel is allegedly able to compete in the relevant markets without complying with ASTM standards, and the Draft ASTM Triglyceride Standard is intended to expand the burner market, POP Diesel has not adequately alleged an "anticompetitive effect because the [standard], although influential, [will] not [be] required to compete in the market."

July 21, 2011 MOO at 47.

## <u>LAW REGARDING MOTIONS TO STRIKE</u>

Rule 12(f) of the Federal Rules of Civil Procedures provides:

> **(f) Motion to Strike.**  The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act:
>
> > **(1)** on its own; or
> >
> > **(2)** on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

-21-

Fed. R. Civ. P. 12(f).

Professors Charles Alan Wright and Arthur Miller have recognized, however, that such motions are not favored and, generally, should be denied.

> The district court possesses considerable discretion in disposing of a Rule 12(f) motion to strike redundant, impertinent, immaterial, or scandalous matter. However, because federal judges have made it clear, in numerous opinions they have rendered in many substantive contexts, that Rule 12(f) motions to strike on any of these grounds are not favored, often being considered purely cosmetic or "time wasters," there appears to be general judicial agreement, as reflected in the extensive case law on the subject, that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy . . . .
> .

5C C. Wright & A. Miller, Federal Practice & Procedure § 1382, at 433-36 (3d. ed. 2004)(footnotes omitted). See Burget v. Capital W. Sec., Inc., No. CIV-09-1015-M, 2009 WL 4807619, at *1 (W.D. Okla. Dec. 8, 2009)(Miles-LaGrange, J.)(citing Scherer v. U.S. Dep't of Educ., 78 F.App'x 687, 689 (10th Cir. 2003)(unpublished)("While motions to strike are generally disfavored, the decision to grant a motion to strike is within the discretion of the court.").  "Striking a pleading or part of a pleading is a 'drastic remedy and because a motion to strike may often be made as a dilatory tactic, motions to strike under Rule 12(f) generally are disfavored.'" Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc., No. 09-CV-0455-CVE-FHM, 2010 WL 132414, at *5 (N.D. Okla. Jan. 8, 2010)(Egan, J.)(quoting Burget v. Capital W. Sec., Inc., 2009 WL 4807619, *1). "Allegations will not be stricken as immaterial under this rule unless they have no possible bearing on the controversy." Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc., 2010 WL 132414, at *5 (quoting Bd. of Cnty. Comm'rs of the Cnty. of La Plata, Colo. v. Brown Grp. Retail, Inc., No. 08-CV-00855-LTB, 2009 WL 2514094, at *2 (D. Colo. Aug. 14, 2009)(Babcock, J.)). "The Court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed." Friends of

-22-

Santa Fe Cnty. v. LAC Minerals, Inc., 892 F.Supp. 1333, 1343 (D.N.M. 1995)(Hansen, J.)(quoting

Carter-Wallace, Inc. v. Riverton Lab., Inc., 47 F.R.D. 366, 368 (S.D.N.Y. 1969))(internal quotation

marks omitted).

 Professors Wright and Miller have also commented on what constitutes "immaterial" matter

in the context of a motion to strike.  "'Immaterial' matter is that which has no essential or important

relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary

particulars in connection with and descriptive of that which is material." 5C C. Wright & A. Miller,

supra § 1382 (footnotes omitted).  Moreover, "[o]nly material included in a 'pleading' may be the

subject of a motion to strike, and courts have been unwilling to construe the term broadly.  Motions,

briefs, . . . memoranda, objections, or affidavits may not be attacked by the motion to strike."

Dubrovin v. The Ball Corp. Consol. Welfare Ben. Plan For Emps., No. 08-CV-00563-WYD-KMT,

2009 WL 5210498, at *1 (D. Colo. Dec. 23, 2009)(Daniel, J.)(quoting 2 M. Squiers & J. Moore,

Moore's Federal Practice § 12.37[2], at 12-128 (3d ed. 2004)).  See Ysais v. N.M. Judicial Std.

Comm'n, 616 F.Supp.2d 1176, 1184 (D.N.M. 2009)(Browning, J.)(citing Searcy v. Soc. Sec.

Admin., 956 F.2d 278, 1992 WL 43490, at *1, *4 (10th Cir. Mar 2, 1998)(unpublished table

decision))("Generally . . . motions, briefs, and memoranda may not be attacked by a motion to

strike.").  "The Federal Rules of Civil Procedure define 'pleadings' as a complaint or third-party

complaint; an answer to a complaint, a third-party complaint, a counterclaim, or a crossclaim; and,

'if the court orders one, a reply to an answer.'"  Ysais v. N.M. Judicial Std. Comm'n, 616 F. Supp.

2d at 1184 (quoting Fed.R.Civ.P. 7(a)).

### LAW REGARDING RAISING NEW ISSUES IN A REPLY BRIEF.

 The local rules govern the motion practice in this Court and permit the parties to file a

dispositive motion, a response to the motion, and a reply.  See D.N.M.LR-Civ. 7.1(a).  The local

rules, consistent with the federal rules, require every motion to "state with particularity the grounds" for seeking the order.  D.N.M.LR-Civ. 7.1(a); Fed. R. Civ. P. 7(b)(1)(B).  The local rules further require motions, responses, and replies to specifically "cite authority in support of the legal positions advanced."  D.N.M.LR-Civ. 7.3(a).  Thus, motions that "state with particularity the grounds" on which they are based allow other parties to decide whether to oppose them, and, if they oppose them, to file thorough, researched responses.  "[R]eply briefs reply to arguments made in the response brief -- they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."  Pac. Gas & Elec. Co. v. United States, 69 Fed. Cl. 784, 817 (Fed. Cl. 2006).

A sur-reply may be filed only with leave of Court.  See D.N.M. LR-Civ. 7.4(b).  "The inequity of a court considering arguments and issues that were raised for the first time in a reply brief should be apparent," because the respondent will not have had an opportunity to respond to the new arguments.  Glad v. Thomas Cnty. Nat'l Bank, No. 87-1299-C, 1990 WL 171068 , at *2 (D. Kan. Oct 10, 1990)(Crow, J.).  See Wagher v. Guy's Foods, Inc., 765 F.Supp. 667, 671 (D. Kan. 1991)(Crow, J.)("In pursuit of fairness and proper notice," the court generally summarily denies or excludes "all arguments and issues first raised in reply briefs.").  Thus, the United States Court of Appeals for the Tenth Circuit has held that, in resolving a summary-judgment motion, a district court need not consider new issues or arguments raised in a reply brief, but if it "relies on new materials or new arguments in a reply brief, it may not forbid the nonmovant from responding to these new materials."  Pippin v. Burlington Res. Oil & Gas Co., 440 F.3d 1186, 1192 (10th Cir. 2006)(internal quotation marks  omitted).  There is yet another good reason why movants may not save issues and legal arguments until their reply brief, which, if considered, would necessitate permitting a sur-reply and encourage, as in the case at bar, the moving party to request permission

to file a sur-response to the sur-reply: "[t]he paper exchanges between parties must have an end

point and cannot be permitted to become self perpetuating."  EEOC v. Int'l Paper Co., No.

91–2017–L, 1992 WL 370850, at *10 (D. Kan. Oct. 28, 1992)(Lungstrum, J.).  As the district court

stated in City of Fairview Heights v. Orbitz, Inc., No. 05–CV–840–DRH, 2008 WL 895650 (S.D.Ill.

March 31, 2008),

> As a general rule, the Court will not consider arguments or evidence raised for the
> first time in a reply brief.  It is the practice of this Court . . . to strike this type of
> newly-raised material, unless there is some legitimate reason why the argument or
> evidence could not have been raised earlier. . . . It would be unfair for the Court to
> allow the amended definition [in the reply brief] to stand without giving Defendants
> the opportunity to respond.  This type of endless back-and-forth is precisely the
> reason why the Court does not allow new issues in reply briefs and sur-replies.  At
> this point, the class definition should not be a moving target.

2008 WL 895650 at *3.  In short, a party "may not hold [a] specific . . . [argument] in reserve until

it is too late for the [other side] to respond."  United States v. Lewis, 594 F.3d 1270, 1285 (10th Cir.

2010).  "[T]he general rule in [the Tenth] circuit is that a party waives issues and arguments raised

for the first time in a reply brief . . . ."  M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d 753, 768

n.7 (10th Cir. 2009).

## LAW REGARDING MOTIONS FOR RECONSIDERATION

The Tenth Circuit has recognized:

> Generally, a "motion for reconsideration, not recognized by the Federal Rules of
> Civil Procedure, Clough v. Rush, 959 F.2d 182, 186 n.4 (10th Cir. 1992), may be
> construed in one of two ways: if filed within 10 days of the district court's entry of
> judgment, it is treated as a motion to alter or amend the judgment under Rule 59(e);
> if filed more than 10 days after entry of judgment, it is treated as a motion for relief
> from judgment under Rule 60(b)."  Computerized Thermal Imaging, Inc. v.
> Bloomberg, L.P., 312 F.3d 1292, 1296 n.3 (10th Cir. 2002)[3].

---

[3] The time limit in rule 59(e) is now twenty-eight days rather than ten days.  See Fed. R. Civ.
P. 59(e).

<u>Price v. Philpot</u>, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005).  Rule 60(b) provides, in relevant part:

> On motion and just terms, the court may relieve a party . . . from a final judgment . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); . . . or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  "Rule 60(b) relief is extraordinary and may only be granted in exceptional circumstances."  <u>Dronsejko v. Thornton</u>, 632 F.3d 658, 664 (10th Cir. 2011)(internal quotation marks omitted).  "Rule 60(b)'s categories are mutually exclusive."  <u>Zurich N. Am. v. Matrix Serv., Inc.</u>, 426 F.3d 1281, 1293 (10th Cir. 2005).

> Rule 60(b)(1) is not available to allow a party merely to reargue an issue previously addressed by the court when the reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument.  <u>Van Skiver v. United States</u>, 952 F.2d 1241, 1243 (10th Cir. 1991) ("revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original summary judgment motion was briefed is likewise inappropriate."), <u>cert. denied</u>, 506 U.S. 828, 113 S. Ct. 89, 121 L. Ed. 2d 51 (1992).

<u>Cashner v. Freedom Stores, Inc</u>., 98 F.3d at 577.

> The kinds of mistakes by a party that may be raised by a Rule 60(b)(1) motion are litigation mistakes that a party could not have protected against, such as the party's counsel acting without authority of the party to that party's detriment.  <u>See Thompson v. Kerr-McGee Refining Corp.</u>, 660 F.2d 1380, 1384-85 (10th Cir. 1981) (granting relief under Rule 60(b)(1) when litigation had previously been dismissed because of reliance upon attorney's advice that no appearance was necessary); <u>Surety Insur. Co. of Calif. v. Williams</u>, 729 F.2d 581, 582-83 (8th Cir. 1984)("[A] judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry") (internal quotation marks omitted).  Rule 60(b)(1) relief has also been granted upon a showing of a party's excusable failure to comply with procedural rules.  <u>Wallace v. McManus</u>, 776 F.2d 915, 917 (10th Cir.1985)(per curiam)(finding "excusable neglect" under Rule 60(b) when a pro se prisoner let an appeal deadline lapse after notice of the entry of judgment was sent to her former attorney rather than to her).

<u>Cashner v. Freedom Stores, Inc</u>., 98 F.3d at 577-78.  "Rule 60(b)(1) is not available to provide relief when a party takes deliberate action upon advice of counsel and simply misapprehends the

consequences of the action." Cashner v. Freedom Stores, Inc., 98 F.3d at 579.

In regard to relief requested under rule 60(b)(2), "[m]otions to reopen for newly discovered evidence are not favored." Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 728 (10th Cir. 1993). "A plaintiff must overcome a higher hurdle to obtain relief from a post-judgment motion than on direct appeal from a judgment." LaFleur v. Teen Help, 342 F.3d 1145, 1153 (10th Cir. 2003).

> To be eligible for relief under Rule 60(b)(2), the moving party must show: (1) the evidence was newly discovered since the trial; (2) the moving party was diligent in discovering the new evidence; (3) the newly discovered evidence [was] not merely cumulative or impeaching; (4) the newly discovered evidence is material; and (5) that a new trial with the newly discovered evidence will probably produce a different result.

Dronsejko v. Thornton, 632 F.3d at 670 (internal quotation marks omitted). When, as here, relief is sought from an order dismissing the case and not from the result of a trial, "the required showing under Rule 60(b)(2) remains the same." Dronsejko v. Thornton, 632 F.3d at 670.

Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case." Van Skiver v. United States, 952 F.2d 1241, 1244 (10th Cir. 1991)(internal quotation marks omitted). "Rule 60(b)(6) relief is even more difficult to attain and is appropriate only when it offends justice to deny such relief. The denial of a 60(b)(6) motion will be reversed only if we find a complete absence of a reasonable basis and are certain that the decision is wrong." Zurich N. Am. v. Matrix Serv., Inc., 426 F.3d at 1293 (citations omitted)(internal quotation marks omitted).

> No time limit applies to rule 60(b)(6), save that the motion be made within a reasonable time. See Fed. R. Civ. P. 60(c)(1). "Courts have found few narrowly-defined situations that clearly present 'other reasons justifying relief.'" 11 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure, § 2864 (2d ed. 2011). In Pioneer Investment Services Co. v. Brunswick Associates Ltd., 507 U.S. 380 (1993), the Supreme Court reasoned that, to avoid abrogating the one year time limit for rule 60(b)(1) to (3), rule 60(b)'s "provisions are mutually exclusive, and thus a party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)." 507 U.S. at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 & n.11

-27-

(1988)).

Sawyer v. USAA Ins. Co., No. 11-0523, 2012 WL 843639, at *24 (D.N.M. Mar. 8, 2012)(Browning, J.).

## ANALYSIS

While Mr. Convisser cannot represent POP Diesel in federal court, POP Diesel continues to have local counsel who are members of the Federal Bar and admitted to practice before this Court. That POP Diesel has qualified counsel provides a sufficient basis for the Court to address POP Diesel's filings.  Because the Defendants have not objected to the general filing of the documents and because they do not object to the late filing of the Reply brief, the Court will grant the Motion for Leave, but will deny the Motion for Reconsideration.  The Court will deny the requests in the Motion to Strike, because a court does not ordinarily strike briefings, see Ysais v. N.M. Judicial Std. Comm'n, 616 F.Supp.2d at 1184, and does not believe that a sur-reply is necessary, but will consider the arguments contained in the Motion to Strike when deciding the Motion for Reconsideration.

## I.     MR. CONVISSER HAS NOT PROPERLY ENTERED AN APPEARANCE, AND HAS IMPROPERLY FILED MOTIONS AND OTHER DOCUMENTS.

Mr. Convisser has not been admitted or licensed to practice in this Court, and he has not followed the procedures required to enter an appearance, and to file motions or other documents. See D.N.M.LR-Civ. 83.3-83.4(a) (July 2011).  "A corporation . . . must be represented by an attorney authorized to practice before this Court."  D.N.M.LR-Civ. 83.7 (July 2011).  Mr. Convisser's attempt to represent a corporation as a "pro se representative" and his statement that "he is conducting this suit pro se as an officer of the POP Diesel corporation" are insufficient to bridge the representation gap.  The words "pro se" mean "on his own behalf."  Garner, Dictionary of Modern Legal Usage 443 (1987).  Mr. Convisser is not a party to this suit, and it appears that he would have been its major witness, if the Court had not dismissed the case.  See Declaration of

Claude Convisser at 1-30, filed February 2, 2011 (Doc. 7)(testifying on behalf of POP Diesel in opposition to motions to dismiss).   If he was a party, Mr. Convisser could represent himself pro se, but he can not represent another entity pro se.   See 28 U.S.C. § 1654 ("Parties may plead and conduct their own cases personally.")(emphasis added); Rowland v. Cal. Men's Colony, 506 U.S. 194, 201-202 (1993)("It has been the law for the better part of two centuries [ . . . ] that a corporation may appear in the federal courts only through licensed counsel."); Two Old Hippies, LLC v. Catch the Bus, LLC, No. 10-0459, 784 F.Supp.2d 1221, 1222-30 (D.N.M. February 14, 2011)(Browning, J.)(discussing legal principles underlying rule that a corporation must be represented by a licensed attorney to appear in federal court).

Because Mr. Convisser is not a licensed member of the Federal Bar and because he has not associated himself with a member of the Federal Bar who certifies that Mr. Convisser is a member in good standing of another bar, Mr. Convisser was not authorized to enter an appearance for POP Diesel, or to file and serve documents electronically.   Because no licensed member of the Federal Bar who has entered an appearance for POP Diesel has signed those documents on POP Diesel's behalf, the Court has the authority under the local rules to strike the documents.   See D.N.M.LR-Civ. 83.5 (July 2011)(providing that a party "who is represented by an attorney may not personally make any filings other than a notice of appeal").   D.N.M.LR-Civ 83.8(b)(Jan. 2012) provides:

> A motion to withdraw from representation of a corporation, partnership or business entity other than a natural person must include a notice that the corporation, partnership or business entity can appear only with an attorney.   Absent entry of appearance by a new attorney, any filings made by the corporation, partnership or business entity may be stricken and default judgment or other sanctions imposed.

D.N.M.LR-Civ. 83.8(b).   See Med. Supply Chain, Inc. v. Neoforma, Inc., No. 08-3187, 322 F.App'x 630, 633-34 (10th Cir. 2009)(unpublished)(affirming district court's striking of pro-se corporate officer's Rule 60(b) and Rule 59(e) motions, "explaining that [the pro-se filer] was still neither a

plaintiff nor a licensed attorney"). Nevertheless, "although district judges must follow local rules when adherence furthers the policies underlying the rules, they have discretion in applying and interpreting local rules." Hernandez v. George, 793 F.2d 264, 267 (10th Cir. 1986). While the Court has the power to strike Mr. Convisser's filings, it also has discretion under the local rules not to strike the filings. See D.N.M.LR-Civ 83.8(b). Because New Mexico attorneys licensed to practice before the Federal Bar at the time Mr. Convisser filed the motions still represented POP Diesel, the Court will consider the filings. Moreover, because under the Federal Rules of Civil Procedure, motions to strike are generally reserved for pleadings rather than motions and briefs, the Court is reluctant to strike the briefs. See Ysais v. N.M. Judicial Std. Comm'n, 616 F. Supp. 2d at 1184 (citing Searcy v. Soc. Sec. Admin., 1992 WL 43490, at *1, *4)("Generally . . . motions, briefs, and memoranda may not be attacked by a motion to strike."). Finally the Defendants did not ask the Court to strike anything on the basis of Mr. Convisser's status before the Federal Bar, and they have responded to Mr. Convisser's analyses on the merits.

The Court will address the Motion for Reconsideration that Mr. Convisser filed on its merits, given the significance of the filings. Because the Defendants do not object to the late filing of his consolidated reply brief, the Court grants Mr. Convisser's motion for an extension of time of one day to file his Reply.[4]

## II.    THE COURT WILL DENY THE MOTION TO STRIKE, BUT WILL ALSO DENY THE MOTION FOR RECONSIDERATION WITH RESPECT TO THE NEWLY DISCOVERED EVIDENCE AND ARGUMENT THAT THE COURT MADE A MISTAKE OF LAW.

The Court will deny the Motion to Strike, see Ysais v. N.M. Judicial Std. Comm'n, 616

---

[4] The Court informed the parties that it would grant the unopposed motion to file one day out of time at the December 15, 2011 hearing. See Transcript of Hearing at 5:13 (December 15, 2011)(Court).

F.Supp.2d at 1184, but finds persuasive the arguments raised in that motion.  The evidence presented in POP Diesel's Reply cannot be fairly characterized as newly discovered evidence "that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P. 60(b)(2).  Therefore, the Court may not consider that evidence in a motion for reconsideration brought under Rule 60(b)(2).  Because POP Diesel did not raise the issue of judicial mistake-of-law within thirty days of the filing of final judgment, the Court may not consider that issue in a motion to reconsider brought under Rule 60(b)(1).

### A.  THE EVIDENCE IN THE REPLY IS NOT NEWLY DISCOVERED EVIDENCE UNDER RULE 60(b)(2).

In its Motion to Strike, ASTM International contends that the minutes of the June 2007 meeting with its attachments "were available to POP Diesel [on its website] well before POP Diesel filed its opening brief in support of its motion for reconsideration;" and that Turner's "experience was well-documented in presentations that were available to POP Diesel long before it filed its motion for reconsideration" via public websites.  Motion to Strike at 3-4.  It further contends that the facts regarding the "exact number of gallons of triglyceride fuel used by Mr. Turner in trials at his farm" are irrelevant to the antitrust conspiracy claims.  Motion to Strike at 4.  ASTM International asserts that the 2002 report is not new evidence and that the fact that Subcommittee P admitted that the 2002 report was the only study it reviewed is immaterial to dismissal of POP Diesel's antitrust claims.  See Motion to Strike at 4.  The Court disagrees that the 2002 report is immaterial to POP Diesel's antitrust claims because, as discussed below, the Working Group informed POP Diesel during discovery that the 2002 Report was the only technical evidence on which it relied in developing the Triglyceride Standard and yet the Working Group included statements in the Standard that are allegedly contrary to that 2002 Report.  This information suggests

that the Working Group submitted to ExxonMobil's pressure to include extraneous language in the Standard that has an anticompetitive effect on POP Diesel and other sellers of triglyceride diesel fuel.  The Court will analyze, therefore, whether the 2002 Report, POP Diesel's knowledge that it was the only technical report on which the Working Group relied, and the evidence regarding Turner's experience are newly discovered under rule 60(2)(b), and will deny the Motion to Strike in that respect.

POP Diesel contends that it has good cause for not raising the newly discovered evidence issue in its initial motion to reconsider, because Mr. Conviser was not aware of that evidence until the day after he filed the motion, and because POP Diesel will be unfairly prejudiced if the Court does not consider this argument.  See Plaintiff's Response to Defendant ASTM International's Motion to Strike Parts of Plaintiff's Consolidated Reply in Support of Its Motion for Reconsideration, or, in the Alternative, for Leave to File a Sur-Reply at 3-4, filed October 20, 2011 (Doc. 107).  This evidence cannot, however, be fairly characterized as newly discovered evidence "that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P. 60(b)(2).

In its Second Amended Complaint, POP Diesel alleges that the 2002 University of Georgia report was the "only report" that Subcommittee P considered in creating the Triglyceride Standard.

> [T]here are no data or reports to support the provisions of the Draft ASTM Triglyceride Standard to which Conviser has objected.  In fact, the only report to which ASTM referred Conviser, which came from the University of Georgia, supported Conviser's point that triglyceride diesel fuel and petroleum-based diesel fuel are miscible.

Second Amended Complaint ¶ 52(e), at 20-21.  It is undisputed that Turner gave POP Diesel a copy of the report during discovery.  See Declaration of Claude Conviser ¶ 46 at 14.  That ASTM International later formally admitted that this Report is, in fact, the only report it used in drafting

its proposed standards does not make either the Report or POP Diesel's knowledge that it was the only technical evidence on which the Working Group relied "newly discovered" evidence.

The Second Amended Complaint mentions the 2002 University of Georgia report as evidence of only an "irregularity" in the ASTM proceedings. Second Amended Complaint ¶¶ 52, 52(e), at 20-21. Otherwise, it is not mentioned in the remainder of the Second Amended Complaint. When objecting to the Defendants' motions to dismiss, POP Diesel never raised this irregularity as evidence of an antitrust conspiracy, even though it relied on several of the other alleged irregularities listed in paragraph 52 in its statement of facts. See Plaintiff's Combined Memorandum of Law in Opposition to the Defendants' Motions to Dismiss at 10, filed April 22, 2011 (Doc. 74). The Court addressed each of these irregularities in detail, and determined that none of them supported an antitrust conspiracy. See July 21, 2011 MOO at 43-44 and 48-50. As demonstrated by the allegations in the Second Amended Complaint quoted above, POP Diesel knew, when its attorneys filed the Second Amended Complaint, that the 2002 Georgia report, which allegedly contradicted many of the statements in the proposed Triglyceride Standard, was the only written technical evidence on which the Working Group and Subcommittee P relied, and yet it did not argue that this evidence supported its theory of antitrust conspiracy in its response in opposition to the motion to dismiss. POP Diesel appears to have held "[a] specific . . . [argument] in reserve until it is too late for the [other side] to respond." United States v. Lewis, 594 F.3d at 1285. The Court concludes that the evidence regarding the 2002 University of Georgia Report is not "newly discovered" under rule 60(b)(2). M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d at 768 n.7.

The same analysis holds true for the information about Turner's experience. POP Diesel states in its Memorandum Motion to Reconsider that its former counsel knew about Turner's experience from viewing his farm's website at www.laughingstockfarm.com. See Memorandum

Motion to Reconsider at 8.  A review of this website shows that Turner also described his farm's use of triglyceride fuels as follows: "At the present time, we operate three burners for a total of more than 3,500 hours per year.  The burners each consume 2.5 gallons of TBF per hour, which means that we use almost 10,000 gallons of TBF each year resulting in savings of about $25,000 per year." Our Commitment to Renewable Energy On and Off the Farm, http://www.laughingstockfarm.com/Farm/Renewable/Renewable.htm (last visited Mar. 21, 2012) Thus, the same information  contained in the attachments to the minutes of the June 2007 meeting regarding Turner's experience with triglyceride fuel was available in the materials POP Diesel's former counsel accessed to determine Turner's experience before it prepared the Second Amended Complaint.  See Memorandum Motion to Reconsider at 5, 8 (complaining that former counsel did not include facts in the Second Amended Complaint that were "obviously known" at the time and noting that "POP Diesel™'s Minnesota lawyers discovered that ASTM International's technical contact and the Chair of its Working Group on Triglyceride Diesel Fuels, Ralph Turner . . . , has substantial links to the biodiesel industry" by reviewing "Mr. Turner's website [at] www.laughingstockfarm.com/about/ralph_bio.htm").   Because neither the knowledge that the Working Group and Subcommittee P relied only on the 2002 University of Georgia Report nor the information about Turner's experience with triglyceride fuels are newly discovered evidence "that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," the evidence fails to satisfy the prerequisite for consideration in a motion to reconsider brought under rule 60(b)(2) and the Court will deny the Motion for Reconsideration on that basis.

### B.   THE COURT DID NOT MAKE A MISTAKE OF LAW, AND THE ISSUE IS UNTIMELY RAISED.

ASTM International contends that the Court should strike the mistake-of-law basis for

reconsideration because POP Diesel did not raise the basis until the Reply, and because the Court's "dismissal order was not based in any part on a resolution of the factual accuracy of that allegation or any of POP Diesel's other allegations related to the nitty-gritty of the technical disputes that were raised by Mr. Convisser within ASTM."  Motion to Strike at 5 & n.4.  The Court agrees with ASTM International's analysis, but will not strike the briefing on that basis.  See Dubrovin v. The Ball Corp. Consol. Welfare Ben. Plan For Emps., 2009 WL 5210498, at *1

In his response brief and at the hearing, Mr. Convisser asserted that his argument in the Reply based on the Court's alleged mistake of law was "foreshadowed" or "mentioned" at page 13 of his Memorandum Motion to Reconsider.  Transcript of Hearing at 8:5-10 (December 15, 2011) (Convisser)("Tr.").[5]  Page 13 of the Memorandum Motion to Reconsider deals with what Mr. Convisser considered former counsel's "[m]ost egregious[]" error:  that former counsel's response to the Defendants' motions to dismiss "contradicted the very premise of its antitrust claims, the fact that, as stated in all versions of its complaint, New Mexico law, and the statutes and regulations of most other states, incorporates by reference ASTM Standards governing petroleum and motor fuels once they are adopted and published."  Memorandum Motion to Reconsider at 13.  POP Diesel posits that "publication by ASTM of a Standard for triglyceride diesel fuel would automatically become law in New Mexico" under its State Diesel Fuel Standards.  Memorandum Motion to Reconsider at 15.

POP Diesel has not, however, supplied a good reason for changing the basis of its Motion for Reconsideration from attorney error to the Court's alleged mistake of law based on attorney error.  Further, controlling Tenth Circuit precedent precludes reconsideration based on an alleged

---

[5]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

judicial mistake of law under the circumstances of this case.

> [A] mistake of law cannot be reached under 60(b)(1) where no notice of appeal was timely filed from the order in which the mistake is alleged to have occurred, and the time for filing such a notice of appeal had expired when the 60(b) motion was filed. A contrary rule would permit a 60(b) motion to serve as an appeal, which would be untimely otherwise.

Morris v. Adams-Millis Corp., 758 F.2d 1352, 1358 (10th Cir. 1985).  See Cashner v. Freedom Stores, Inc., 98 F.3d 572, 578 (10th Cir. 1996)("[W]hen Rule 60(b)(1) is used to challenge a substantive ruling by the district court, we have required that such a motion be filed within the time frame required for the filing of a notice of appeal.").  POP Diesel did not file a timely notice of appeal from the July 21, 2011 Final Judgment, and first raised its judicial-mistake-of-law argument under rule 60(b)(1) in its Reply, almost two months after the Court had entered Final Judgment. Because POP Diesel raised the judicial mistake-of-law issue, which challenges an alleged substantive ruling, more than thirty days after final judgment was entered and after the time for filing a notice of appeal has expired, the Court is precluded from reconsidering, at this time, an alleged judicial mistake of law.  See Morris v. Adams-Millis Corp., 758 F.2d at 1358; Cashner v. Freedom Stores, Inc., 98 F.3d at 578.

It is worth noting that the Court did not dismiss the Second Amended Complaint on the basis of POP Diesel's failure to allege an anticompetitive effect because of the "curious" statements counsel made at the hearings and in its briefing that were antithetical to POP Diesel's claims.  See July 21, 2011 MOO at 47-48 & n.6.  Instead, the Court referred to the allegations in the Second Amended Complaint, wherein POP Diesel stated that it is currently competing with Defendants ExxonMobil and Chevron in the diesel-fuel market for internal-combustion engines.  See July 21, 2011 MOO at 47-48.  The Court stated:

> POP Diesel alleges in the SAC that notwithstanding the incorporation of ASTM

> standard into N.M.S.A. 1978, § 57-19-29A . . . and notwithstanding that its product
> does not meet the standards 'last adopted and published by [ASTM],' SAC 32, at 8-
> 9, it 'competes in the Relevant Markets against the Defendant Oil Companies, as
> well as other producers and sellers of diesel fuel,' SAC ¶ 24, at 7.

July 21, 2011 MOO at 47-48.  The Court also noted that, because POP Diesel

> is allegedly able to compete in the relevant markets without complying with ASTM
> standards, and the Draft ASTM Triglyceride Standard is intended to expand the
> burner market, POP Diesel has not adequately alleged an 'anticompetitive effect
> because the [standard], although influential, [will] not [be] required [for POP Diesel]
> to compete in the market.

July 21, 2011 MOO at 47-48.  Thus, contrary to POP Diesel's assertion, the Court did not conclude,

as a matter of law, "that the New Mexico Petroleum Product Standards Act, New Mexico Code

Chapter 57, Article 19 . . . does not include triglyceride diesel fuel within its scope and hence, the

publication of the Standard would not have the effect of law in New Mexico."  Reply at 15.

Accordingly, the Court did not make the mistake of law that POP Diesel alleges was in the Court's

July 21, 2011 Opinion and will deny the Motion for Reconsideration on that basis.

## III.   THE COURT WILL DENY THE MOTION FOR RECONSIDERATION ON ALL OTHER GROUNDS.

In its Memorandum Motion to Reconsider, POP Diesel conceded that the Court properly

dismissed its antitrust conspiracy claim for failure to state a plausible claim, but requested

reconsideration and an opportunity to amend its complaint because its former counsel "failed to

competently present its claims and handle" the case.  Memorandum Motion to Reconsider at 1, 3.

"After a district court enters a final judgment . . . it may not entertain motions for leave to amend

unless the court first sets aside or vacates the judgment pursuant to Fed. R. Civ. P. 59(e) or 60(b)."

Combs v. Price Waterhouse Coopers LLP, 382 F.3d 1196, 1205 (10th Cir. 2004).  In United States

v. Morales-Ramirez, No. CIV 10-0030, Memorandum Opinion and Order, filed February 14, 2011

(Doc. 25)(Browning, J.)("Morales-Ramirez MOO"), the Court stated:

> Even though "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), "this presumption is reversed in cases, such as here, where a plaintiff seeks to amend a complaint after judgment has been entered and a case has been dismissed." The Tool Box, Inc., v. Ogden City Corp., 419 F.3d 1084, 1087 (10th Cir. 2005)(quoting Bressner v. Ambroziak, 379 F.3d 478, 484 (7th Cir. 2004). . . . And furthermore, "once judgment is entered, the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b)." Cooper v. Shumway, 780 F.2d 27, 29 (10th Cir. 1985)(per curiam).

Morales-Ramirez MOO at 1-2.

The attorney mistakes that POP Diesel alleges in the Memorandum Motion to Reconsider are (i) wasting an opportunity to amend the complaint; (ii) drafting a "less-than-plausible antitrust conspiracy into the second amended complaint;" (iii) filing an "incompetent response brief . . . which set up dismissal of the suit" without seeking input from Mr. Convisser; and (iv) "failing to keep to [scheduled] hearings." Memorandum Motion to Reconsider at 3-4. These mistakes, however, are not "litigation mistakes that a party could not have protected against, such as the party's counsel acting without authority of the party to that party's detriment." Cashner v. Freedom Stores, Inc., 98 F.3d at 577-78. The Court's rulings were based on its review of the Second Amended Complaint, which POP Diesel authorized its counsel to prepare and file. Mr. Convisser had ample time to review the Second Amended Complaint between the time former counsel moved to file the Second Amended Complaint and the time the Court granted the stipulated motion, and if he did not approve of it, to repudiate it before it was filed. Former counsel also had the authority to file briefs on POP Diesel's behalf, even if they made mistakes in their factual or legal arguments and did not consult Mr. Convisser before filing those briefs. POP Diesel is not entitled to relief under rule 60(b)(1) because of its former counsel's errors.

Because the Court will not reconsider the dismissal of POP Diesel's antitrust conspiracy claims and set aside the Final Judgment, the Court will also not permit POP Diesel an opportunity

to amend its complaint in this closed case.  See Combs v. Price Waterhouse Coopers LLP, 382 F.3d

at 1205.

**IT IS ORDERED** that: (i) the Plaintiff's Motion to Reconsider Dismissal with Prejudice and

for Leave to File a Third Amended Complaint, filed August 23, 2011 (Doc. 96), is denied; (ii) the

Plaintiff's Motion for Leave to File Consolidated Reply Brief One Day out of Time Due to CM/ECF

Computer Snafu, filed September 20, 2011 (Doc. 103), is granted; and (iii) that Defendant ASTM

International's Motion to Strike Parts of Plaintiff's Consolidated Reply in Support of Its Motion for

Reconsideration, or, in the Alternative, for Leave to File a Sur-Reply, filed October 4, 2011 (Doc.

106), is denied.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

David J. Jaramillo
Maria E. Touchet
The Gaddy Jaramillo Law Firm
Albuquerque, New Mexico

-- and --

Claude D. Convisser
Santa Fe, New Mexico

     Attorneys for the Plaintiff

Julian Brew
Kaye Scholer, LLP
Los Angeles, California

-- and --

David F. Cunningham
Thompson, Hickey, Cunningham, Clow, April & Dolan, P.A.
Santa Fe, New Mexico

*Attorneys for Defendant ExxonMobil Corporation*

Andrew G. Schultz
Rodey, Dickason, Sloan, Akin & Robb, P. A.
Albuquerque, New Mexico

*-- and --*

D. Bruce Hoffman
David A. Higbee
Ryan Shores
Thomas G. Slater
Hunton & Williams, LLP
Washington, DC

*-- and --*

Thomas G. Slater
Hunton & Williams LLP
Richmond, Virginia

*Attorneys for Defendant Chevron Corporation*

George S. Cary
Steven J. Kaiser
Cleary Gottlieb Steen & Hamilton, LLP
Washington, DC

*-- and --*

Michael B. Campbell
Campbell Trial Law, LLC
Santa Fe, New Mexico

*Attorneys for Defendant Chevron Corporation Conocophillips*

John B. Pound
Long, Pound & Komer, P.A.
Santa Fe, New Mexico

*-- and --*

Thomas B. O'Brien
ASTM International
West Conshohocken, Pennsylvania

*-- and --*

Mark P. Edwards
R. Brendan Fee
Morgan, Lewis & Bockius, LLP
Philadelphia, Pennsylvania

  *Attorneys for Defendant ASTM International*

Daniel Laytin
Leslie S. Garthwaite
Leslie M. Smith
Sandra Maja Fabula
Kirkland & Ellis LLP
Chicago, Illinois

*-- and --*

John R. Cooney
Zachary L. McCormick
Modrall Sperling Roehl Harris & Sisk PA
Albuquerque, New Mexico

  *Attorneys for Defendant BP Products North America, Inc.*